THE HOME FORUM BENEFIT ORDER v. LIZZIE JONES.

1. HOME FORUM BENEFIT ORDER—*To What Extent a Mutual Insurance Company.* A corporation created and organized for the purposes, as announced by the Home Forum Benefit Order, is, in so far as it seeks to give an indemnity to those holding beneficiary certificates, a mutual life insurance company, and their liability for insurance given must be measured by the same rules which govern the liability of mutual life insurance companies.

2. MUTUAL BENEFIT INSURANCE COMPANIES—*Knowledge of Members of the Rules of.* In mutual benefit insurance companies the fact of membership carries with it the obligation derived from the rules of the society as well as the general laws applicable to insurance, and the member is presumed to know and is bound by such rules.

3. LIFE INSURANCE—*Extent of Agency Powers.* It may be stated as a general rule that agents of life insurance companies do not have authority to con-

clude absolutely the contract of insurance, but only to procure and receive applications, which they forward to the company, to be acted upon by the immediate officers of the corporation, who alone have power to issue the policy.

4. SUBORDINATE LODGES OF BENEFICIARY ORDER—*Extent of Power.* Subordinate lodges of a beneficiary order may have a very limited or a very wide authority. If they have blank certificates which they can issue to whom they please, they can bind their superiors to almost anything they do in the line of issuing them. Generally, however, the local lodges are like agents of life insurance companies, in that they can only solicit applications, which are referred to the superior body, to be accepted or declined as its officers may elect. The subordinate lodges are tied down by instructions which they cannot violate, even if they were so inclined.

5. CONTRACT OF INSURANCE—*When Incomplete.* Where, under the constitution and laws of a beneficiary order, it is provided that the local lodge may receive applications for benefit certificates, and that such applications shall, if acceptable to the local lodge, and the medical examiner thereof, be at once forwarded to the grand secretary of the order, who shall submit the same to the grand medical examiner, who has under the constitution and laws of such order authority to reduce the sum named in the application for a beneficiary certificate, or to reject the same altogether, and where it is further provided that no beneficiary certificate shall be binding upon the order until the same has been approved by the grand medical examiner and signed by the president and secretary of the order. *Held.* That the approval and action of such officers are essential to create an obligation upon the beneficiary certificate.

6. SAME—*Delay by Local Lodge in Forwarding Application—Effect of.* And under the conditions recited in the fifth subdivision of the syllabus, it is held that delay upon the part of the local lodge in forwarding the application to the grand lodge will not create a contract in the face of the provisions of the constitution and laws of the order.

*Appeal from the District Court of Oklahoma County.*

This case is brought up from Oklahoma county by the appellant to reverse a judgment obtained by the appellee in the sum of $2,000 and interest. The case arose out out of a claim for life assurance. The opinion states the facts.

*J. A. Wilson* and *H. C. Agnew*, for appellant.

*H. H. Howard* and *T. C. Chambers*, for appellee.

The opinion of the court was delivered by

DALE, C. J.:   The district court of Oklahoma county, on October 16, 1896, rendered a judgment in favor of Lizzie Jones and against the Home Forum Benefit Order in the sum of $2,000, principal, and $133.50, interest. The suit upon which the judgment was rendered was based upon an alleged contract of life assurance, which contract was entered into, as claimed, between one John Jones, husband of Lizzie Jones, and this appellant. The case was tried upon an agreed statement of facts, and in as much as this case must largely be determined upon the facts as they existed between John S. Jones and the appellant, we embody the same in full in this opinion. Omitting the caption, the statement of facts is as follows:

### "AGREED STATEMENT OF FACTS.

"It is hereby stipulated and agreed by and between said parties hereto that the defendant is a corporation duly organized and existing under and by virtue of the laws of the state of Illinois, under an act of the general assembly of said state, entitled, 'An Act to Provide for the Organization and Management of Fraternal Beneficiary Societies for the Purpose of Furnishing Life Indemnity or Pecuniary Benefit to the Beneficiaries of Deceased Members or Accident or Permanent Disability to Members Thereof.'

"That the object of said organization, as incorporated in the constitution and laws, among other things, was and is to provide means from the proceeds of assessments upon its members to assist the disabled from accident and sickness, and to provide for the families of deceased members, and to furnish life indemnity in the sum of from $500 to $3,000, at the minimum cost of the same by mutual co-operative assessment plan, as provided by the statutes of the state of Illinois; that said

corporation regularly passed and adopted a certain constitution and by-laws, which were, prior to and during the entire month of December, 1894, in full force and effect, a true copy of which is attached to the petition of the plaintiff herein, which shall, for the purposes of this case, be treated as the original record of said constitution and by-laws, and either party hereto may read such parts of said constitution and by-laws in evidence as such party may desire without proof of their passage, subject to all lawful objections and exceptions by the other party.

"It is further agreed by and between said parties hereto, that a local forum of said defendant was duly located and established at the town of Edmond, Oklahoma county, Territory of Oklahoma, designated and known as Edmond forum No. 308; that prior to the 3d day of December, 1894, one John S. Jones, the husband of the plaintiff herein, duly made an application in writing to the said local forum No. 308 to become a beneficiary member of said order. That said application is lost; that if the same shall be found before the hearing of this cause, it shall be made a part hereof; but if the same shall not be found and produced, then a blank form, such as upon which the same was made, shall be made a part hereof, which shall be agreed that the same was duly filled out and subscribed as required by the by-laws and constitution of said order; that said application, so made, was duly signed by the applicant and laid before the local forum, by the secretary thereof, prior to said December 3, 1894; that said application was duly acted upon by the officers and members of said forum, reported favorably and accepted, and such election and acceptance duly endorsed on said application, and the same turned over to the local medical examiner prior to the said 3d day of December, 1894, and said applicant duly examined by said local medical examiner on said last named day, and the finding of the facts with reference to his physical condition written by said local medical examiner upon said application, and duly signed by

said applicant, and said local medical examiner; that afterwards, on December 20, 1894, the said applicant was duly received and initiated into said local forum, and that on the same day, and in a short time after such initiation, the said applicant died; that said John S. Jones duly paid into said local forum his membership fee of $4, a certificate fee of $1 and his first mortuary assessment of $1.10, as required by the by-laws of said order, to be paid prior to the delivery of the certificate of membership; and that the said $1.10 is the defendant's assessment rate on a certificate of $2,000, for all persons of the age of said applicant; that at the time of the making of said application, the said John S. Jones was of the age of forty-four or forty-five years. and made said application for membership in said local forum, and a certificate of membership in said order in the sum of $2,000, payable to said plaintiff, Lizzie Jones, wife of said applicant, upon his death.

"It is further agreed by and between said parties that said application for membership was not sent to the office of the chief medical examiner of the defendant, or the principal office of the defendant, until after the death of said John S Jones; that said John S. Jones had no knowledge of what was done with said application after the said third day of December, 1894; that on the day following the death of said John S. Jones some one of the officers of said local forum placed said written application in an envelope and duly mailed the same to the principal office of the defendant at Chicago, Illinois, but that prior to the receipt of said application at said principal office of the defendant, the grand officers thereof were advised of the death of the said John S. Jones, and refused to issue a certificate of membership to him, for the reason that he was dead when the application for the same reached said principal office; that said application was never approved by said chief medical examiner of the defendant by the defendant because said applicant was dead before said application was presented to said chief medical examiner; and that no certificate

of membership was ever issued to the said John S. Jones, and no such certificate was ever delivered by the defendant to said applicant or to any one for him.

"It is further agreed by and between the parties hereto, that this agreement as to the facts, together with such portions of the constitution and by-laws attached to the petition of the plaintiff as either party may desire, subject to objections as above stated, may be read in evidence upon the hearing of this cause, and that neither party shall be prejudiced from offering any additional evidence on account of this agreement, except that no evidence shall be introduced tending to disprove or impeach any fact herein stated.

T. G. CHAMBERS AND H. H. HOWARD,
Attorneys for plaintiff.
J. A. WILSON,
Attorney for defendant."

Attached to the petition of plaintiff, as filed in the court below, is an exhibit which purports to be, and is, the constitution and laws of the Home Forum Benefit Order, governing grand and local forums. An inspection of the constitution and laws of the order shows that the Home Forum Benefit Order is a corporation organized under the laws of the state of Illinois, whose principal office is in Chicago, with subordinate lodges throughout different portions of the United States. That it is under the control and management of a board of five directors, and that the announced objects of the order are:

"*First.* To unite socially all acceptable persons, betwen the ages of 15 and 55 years, for mutual improvement and recreation.

"*Second.* To provide means from the proceeds of assessments upon its members to assist the disabled from accident or sickness, and to provide for the families of deceased members.

"*Third.* To furnish life indemnity to its members in the sum of $500 to $3,000, at the minimum cost of the

same, by a mutual co-operative assessment plan as provided by the Statutes of the state of Illinois.

"*Fourth.* To encourage each other in business, to assist each other to obtain employment, and to promote benevolence and charity."

The officers of the society are styled, grand president, grand secretary, grand treasurer, grand historian, grand orator, grand assistant orator, grand porter, grand guard, attorney and chief medical examiner. The duties of such officers, in so far as it is necessary to state for the purpose of this case, are as follows:

The president shall sign all certificates of membership issued to members; shall have authority to appoint and commission solicitors and organizers, and make rules and regulations for their government, whose duties shall be to increase the membership of the order and institute local forums.

The grand secretary shall prepare and sign all certificates of membership and deliver them to those entitled to receive them. It is made the duty of the chief medical examiner to pass upon all applications for membership, and such officer reserves the right to reduce the amount of indemnity applied for or to reject the applicant, and no certificate of membership shall be issued without his approval. He shall appoint and commission, with the approval of the grand president, all local medical examiners,   Persons of either sex from 16 years to the age of 55 years, except as otherwise provided, of good moral character, who shall pass a regular medical examination by a physician appointed by the chief medical examiner, may become members of the order, subject to all the requirements for membership as set forth in the by-laws and certificate of membership. Each application for membership and indemnity must be in writing

on the blanks furnished by the order, and all questions must be satisfactorily answered. Any person not acceptable as a physical risk may become a social member under the local rules by payment of the regular annual dues, provided, that no person can become a social member (between the age of 16 and 55) whose physical condition is not a bar to life indemnity. The death benefits may be in any sum not less than $500 and not more than $3,000, and the assessments for indemnity are graded according to a table found in the constitution and laws, fixing the different sums so required, based upon the age of the applicant.

In order to become a beneficiary member of a local forum of the Home Forum Benefit Order, the solicitor or a member of the local forum must fill out a blank application, and the applicant must sign it. This application is then laid before the local forum, and the fees paid to the treasurer. It is then referred to a committee, which shall consist of the director, the president and secretary of the local forum. If this committee report favorably, the matter is voted upon at a meeting of the local forum, and the applicant is elected or rejected as a member. If elected as a member, the application is then turned over to the local medical examiner, who makes a physical examination of the applicant, reducing such examination to writing, and after signing the same at once forwards it to the grand secretary of the grand forum. The grand secretary of the grand forum submits the medical examination to the chief medical examiner, who approves or rejects the same. If approved by this officer and so returned to the grand forum, the certificate of membership may issue, which, when issued, shall be sent to the secretary of the local forum from whence it came, where

it shall be recorded, and then turned over to the treasurer, who shall deliver it to the applicant, after he has endorsed the date of the delivery upon the certificate; and at the time of such delivery he shall receive from the applicant one benefit assessment. It is provided that the treasurer of the local forum shall not deliver to any person a certificate of membership unless the applicant is in good health at the time of such delivery. And it is further provided that the liability of the order begins when the first mortuary assessment is paid, and the certificate of membership is delivered. In another portion of the by-laws it is provided that each local forum shall forward to the grand secretary all applications for membership immediately after the application has been written and the applicant examined by the physician and accepted by the local forum. In § 6, art. 24, of the by-laws, the following provision appears:

"Persons shall not become beneficiary members of this order until their examinations have been approved by the chief medical examiner, and they have paid one mortuary assessment, and received a certificate of membership."

Many of the rules and regulations contained in the constitution and laws of the order have not been noticed, as we think we have in substance stated all that will be necessary in the discussion of this case.

As this case will turn entirely upon the question of the membership of Jones, we will next examine the agreed statement of facts in order to determine whether or not Jones was such a beneficiary member of the order as will entitle his wife to recover the indemnity sought in this suit.

It appears that Jones made an application for a beneficiary certificate to the local forum at Edmond, in Oklahoma county, prior to December 3, 1894; that at a meeting

of such forum held on said December 3, 1894, the applicant was duly accepted and such fact was endorsed upon the application, and turned over to the local medical examiner, who, upon December 3, made an examination of Jones, and the findings of fact made by the local medical examiner were by both such medical examiner and Jones duly signed. That afterwards, and on December 20, 1894, Jones was duly received and initiated into the local forum, and that he paid the following sums into the local forum: First, a membership fee of $4; second, a certificate fee of $1; third, the first mortuary assessment of $1.10, which last is the sum required under the rules of the order for a person of the age of Jones upon a policy for $2,000. That the application previously made by Jones named Lizzie Jones, his wife, as the beneficiary under his proposed certificate. Jones died upon the same day and shortly after he was initiated on December 20.

It further appears that the application and medical examination of Jones was not sent to the grand secretary of the order until after the initiation and death of Jones, and that Jones had no knowledge of such neglect or omission upon the part of the officers of the local forum. That upon the day following the death of Jones, some one of the officers of the local forum transmitted the application of Jones to the principal office of the company, where the same was rejected by reason of the fact of the grand officers having been advised of the death of Jones, and such officers refused to issue to him a certificate for the reason that he was dead when the application reached the principal office. The application was not approved by the chief medical examiner for the same reason, and no certificate was ever issued to Jones or to any person for him.

Counsel for appellant insist that no contract of indemnity exists because the application was not approved by the chief medical examiner, and because a certificate was not issued to deceased, as provided by the laws and regulations which govern the admission of beneficiary members into the order. Upon the other hand it is contended that Jones became a member entitled to the benefits accruing to a holder of a certificate by reason of having been initiated into the order by the local forum, and having paid his mortuary assessment, and that the neglect or omission of the local forum must be treated as the negligence of the grand forum, and that the grand forum is estopped thereby from denying the membership of Jones. Numerous decisions are cited by counsel in support of and against the propositions for which they contend, but few of which can be used, because the questions involved in this case are different from those before the courts whose opinions are offered. In fact, in no case cited do we find the precise question herein discussed.

It may be stated as a principle which seems to be settled, that a corporation created and organized for the purposes as announced by the Home Forum Benefit Order is, in so far as it seeks to give an indemnity to those holding beneficiary certificates, a mutual life insurance company. This rule has been so frequently announced and maintained by the courts that it is now beyond dispute. (*Erdman v. Mutual Ins. Co.* 44 Wis. 376; *Bolton v. Bolton*, 73 Me. 299; *Commonwealth v. Weatherbee*, 105 Mass. 149).

From this it appears that their liability for insurance given must be measured by the same rules which govern the liability of mutual life insurance companies. (*Erdman v. Mutual Ins. Co. supra; Commonwealth v. Weatherbee*,

*supra; State v. Critchett*, 37 Minn. 13, 32 N. W. Rep. 787; *Rockwell v. Canton Masonic Ass'n.* 129 Ill. 440).

In mutual benefit insurance companies the fact of membership carries with it the obligation derived from the rules of the society as well as all the general laws applicable to insurance, and the member is presumed to know and is bound by such rules. (*Holland v. Taylor*, 111 Ind. 122; *Baur v. Samson Lodge K. P.* 102 Ind. 262; *K. P. v. Knight*, 117 Ind. 489; *Protection Co. v. Foote*, 79 Ill. 361).

In some states it is held that in mutual benefit societies, the agents and officers of the company cannot waive any of the conditions essential in the by-laws of the company. (*Hale v. Mec. Mut. F. Ins. Co.* 6 Gray, 169; *McCoy v. Roman Catholic, etc.* 152 Mass. 272; *Lyon v. Supreme Assembly, etc.* 153 Mass. 83).

In *McCoy v. Roman Catholic, etc., supra,* the court said:

" But even if the officers of the corporation had attempted to waive the by-laws in this particular, which was of the substance of the contract, we are of the opinion that they had no authority so to do. This is a corporation which does not make contracts of life insurance with strangers, but arranges a system of payments for the benefit of relatives of its deceased members. It adopts by-laws to determine the relations of the members to each other, and also their rights against the corporation. The principles which apply to the ordinary mutual insurance companies in regard to the waiver of by-laws by officers are equally applicable to this corporation."

But this rule is not universally followed, and we think the better principle is stated by Bacon in vol. 1, § 153, as follows:

"Agents of life insurance companies are like those of other corporations; in doing the business of their

39—v.

employers they can represent them alone and not first one party to the contract and then the other. The principals are bound by the acts, within the outlined scope of the authority of the agents while engaged in transacting business, but all limitations which are brought to the knowledge of the persons dealing with them must be respected."

To the same effect is *Ins. Co. v. Mahone*, 21 Wall. 152.

It may be stated as a general rule that agents of life insurance companies do not have authority to conclude absolutely the contract of insurance, but only to procure and receive applications, which they forward to the company, to be acted upon by the immediate officers of the corporation, who alone have power to issue the policy. (Bacon on Insurance, vol. 1, § 150).

"Subordinate lodges of a great beneficiary order may have a very limited or a very wide authority. If they have blank certificates which they can issue to whom they please, they can bind their superiors to almost anything they do in the line of issuing them. Generally, however, the local lodges are like the agents of life insurance companies in that they can only solicit applications, which are referred to the superior body to be accepted or declined as the officers may elect. The subordinate lodges are tied down by instructions which they cannot violate, even if they were so inclined." (Bacon on Ins. § 150; Bliss on Ins. § 283).

Now applying these principles to the facts of this case we find that the Home Forum Benefit Order is a mutual life insurance company whose liabilities are measured by the rules of life insurance companies, and that all persons who become members of it are bound by its own by-laws; that John S. Jones, on December 3, 1894, sought a beneficiary certificate under the constitution and by-laws of the association, into which he was desiring to enter, whose principal office was in Chicago,

Illinois; that such certificate was so sought through the agent of the Home Forum Benefit Order, and which agent was the local forum at Edmond, and at the time he made his application, he was bound to know that, under the by-laws of the order he was about to enter, the beneficiary certificate he sought could only come from the grand forum at Chicago, and that the medical examination must be approved by the chief medical examiner at Chicago before he could be termed an acceptable risk; that these things are plainly stated in the by-laws, of which the courts say he had knowledge. Counsel for appellee in their brief frankly admit that the officers and members had no authority to waive the provisions of the by-laws, but claim that the contract was complete, that the agent's duty was the duty of the principal, and if the agent failed in any duty devolving upon him, but so acted as to lead Jones to believe these duties complied with, and Jones acted and completed the contract by joining the order and paying his mortuary assessment, then and under such circumstances the courts should hold it a completed contract, and declare those things done which were necessary to be done in order to complete such contract; that in this case the things remaining undone were peculiarly within the knowledge of the local forum, and therefore Jones need not inquire further, except to ask the local forum, and he of right could rely upon their conduct in taking him in and receiving his money. This reasoning would be good if the basis for it were sound. In other words, if the local forum could, under any circumstances, have bound its principal, then the reasoning would apply; otherwise, not.

One of the leading cases which counsel for appellee cite in support of their view is *Lorscher v. Supreme Lodge Knights of Honor*, 77 Mich. 316, (40 N. W. 545).

The facts upon which a recovery was adjudged in that
case are briefly stated as follows:   Lorscher, husband of
the party suing, applied to join the order, was examined
by the local medical examiner, and his medical examina-
tion was approved by the said medical examiner; he was
balloted for and elected into the order and paid his
assessments.   The certificate of membership was duly
executed by the supreme lodge and forwarded to the
local lodge for Lorscher, but the local lodge refused to
turn it over to Lorscher on account of some alleged
fraud upon the part of the said Lorscher.   After Lorscher
died, payment to his wife was refused, the supreme lodge
claiming that, first, the certificate was not binding until
it was turned over to Lorscher or the beneficiary named
in such certificate, and, second, that Lorscher had made
false representations in his written statement as to his
physical condition.   Upon the trial of the case no evi-
dence was offered by the lodge in support of the second
ground of their defense.   The supreme court held that
the burden to show the fraud was upon the lodge.   This
left but the one question for decision, to-wit, whether
or not an actual delivery of the certificate was essential
to bind the lodge, and upon such question the court held
that, in as much as everything had been done by both
parties which was necessary to complete the contract,
the failure of the lodge to turn over the certificate, the
mere evidence of the contract, would not avail as a
defense to the action.   The decision was properly rend-
ered upon the facts of the case, and the distinction
between such case and the one we are considering is this:
In that case after the applicant had passed a medical
examination in the subordinate lodge such medical exam-
ination was forwarded to and approved by the supreme
lodge, and upon such approval a certificate had in fact

been issued and transmitted to the subordinate lodge
for delivery. In this case the application was never
forwarded from the local lodge until after the death of
the applicant, was not approved by the chief medical
examiner, who, under the constitution and laws of the
Home Forum Benefit Order, has power to reduce or
reject, and no certificate was ever issued. In the Michi-
gan case the court held that the contract of insurance
was a completed one, the certificate being the mere evi-
dence of the fact of the contract. We have no doubt of
the correctness of the ruling of the court in the case
before it. Unquestionably a suit may be maintained
upon a contract of insurance, and where, as in the case
before that court, the contract of insurance was com-
pleted, the courts will enforce payment, notwithstanding
the fact that the certificate evidencing such contract may
be undelivered. The case of *Young v. Grand Council
A. Or. Aztecs*, 65 N. W. 933, was decided upon the
same principle which governed in *Lorscher v. Supreme
Lodge, supra.*

But it is contended that the extrinsic facts which con-
stitute the condition of validity were peculiarly within
the knowledge of the local forum and were necessarily
implied to exist by the fact of the initiation into the
local forum, and the acceptance of the first mortuary
assessment, and that the law says that under such cir-
cumstances an applicant is not expected to make inquiries.
This argument proceeds upon the assumption that the
local forum had such an agency to act that it could bind
the principal, and is answered by Justice Brewer, in
*Misselhorn v. Mutual Reserve Fund Life Assurance Co.*
30 Fed. Rep. 545. In that case it appears that an appli-
cation for life assurance was made out upon a blank
form which provided that the policy should not be in

force until signed by the officers and delivered to the applicant. There was considerable delay in transmitting the policy to the general office of the company. When received it was approved and made out after the applicant's death, and, in ignorance thereof, delivered at the place where such applicant resided. A recovery was sought upon such policy. The court, in passing upon the question, said:

"By the terms of both the application and the policy it never became an operative contract. Plaintiff insists that there was delay, culpable delay, on the part of the insurance company in acting upon the application. * * Concede that there was unreasonable delay, and yet I do not see how any delay makes a contract in the face of the stipulation. * * While receipt of the application may cast a moral duty upon the company to act promptly, yet delay does not operate in the same way as acceptance of the application. * * No negligence, no delay, reasonable or unreasonable, on the part of the insurance company, could make a contract in the face of the stipulation."

To the same effect is *Kohen v. Mut. Reserve Fund Ass'n*, 28 Fed. Rep. 705. And in *Paine v. Pac. Mut. L. Ins. Co.*, 50 Fed. Rep. 689, where an application for life insurance contained the stipulation that only the home office has authority to determine whether a policy shall issue upon an application, it was held that there is no room for the application of the rule that the powers of a local agent of a corporation are sometimes measured, not by his actual, but by his apparent authority. A similar view was taken in *Ins. Co. v. Young, Ad'm'r*, 23 Wall. 85.

While the authorities are neither uniform nor satisfactory upon the question as to how far the acts of an agent will bind an insurance company, yet we think it may safely be asserted that an agent cannot bind his principal

beyond the express grant of his authority, where the extent of such authority is within the knowledge of the party dealing with such agent. In the absence of knowledge as to the extent of the authority the agency may, under most of the decisions, bind to the extent of the apparent scope of the authority, but this rule has its limitations. If a party seeks admission into a mutual benefit order, he goes in as a member and is presumed to have examined the laws and regulations which control the organization into which he is about to enter, and therefore subjects himself to such laws. There is also a distinction made between life and fire insurance companies. In the former it may not be presumed that the agent can complete the contract, because such authority is seldom, if ever, granted and rarely attempted, while in the latter it is the usual custom to give to agents blank policies to be by them filled out as soon as the agreement to insure is consummated between the agent and the party seeking the insurance, and in this case we reach the conclusion that the decision must turn upon the one question of whether or not the local forum had power to bind its principal. If we apply to this case the rules which seem generally to prevail, we must hold that the parties to the contract were governed by the constitution and laws of the order, which provided that all applications for insurance must be acted upon by the grand forum, and the chief medical examiner must approve the medical examination, before an applicant can be entitled to a beneficiary certificate. We must further hold that Jones was presumed to have known, and joined the order under a knowledge of, such laws, and that the scope of the agency of the local forum did not extend to a waiver of the conditions required for a beneficiary certificate. That the delay and negligence upon the part of the local

forum was not the delay and negligence of the grand forum, and that no delay upon the part of the local forum could bind its principal in the face of the constitution and laws of the order, under which the contract was sought.

Holding to these views, we must reverse the case, and upon the agreed statement of facts give judgment for appellant, and it is so ordered.

Keaton, J., having presided in the court below, not sitting; all the other Justices concurring.