## SOVEREIGN CAMP, W. O. W., v. O'NEIL.

No. 11807—Opinion Filed Feb. 21, 1922.

Rehearing Denied April 4, 1922.

(Syllabus.)

1. **Insurance—Fraternal Life Policy—Incontestability.**

Where a fraternal insurance certificate provides it is subject to the provisions of the by-laws and constitution of the fraternal society, and the constitution and by-laws provide that after the policy has been in force for more than five years immediately prior to the death of the insured, the

same shall be incontestable for any reason, except the insured died by the hands of the beneficiary named therein, and if it is clearly shown that the same was not an accident, held, that such provision is a valid and binding provision, and precludes other defenses.

### 2. Same—Construction—Ambiguity.

Where a fraternal insurance policy provides that the same shall be subject to all the rules and regulations and constitutions and by-laws of the society, and the constitution or by-laws are ambiguous and subject to two constructions, one of which will give the policy effect, the other render it void, that construction should be adopted which will make the policy effective.

### 3. Same—Terms of Contract—How Determined.

The terms of a contract between a fraternal benefit society and its members are to be determined by the constitution and laws of the society as they exist at the beginning of the membership, and as they may be lawfully amended from time to time thereafter, and by agreement made pursuant thereto between the incoming members and the society.

### 4. Same—Power to Change Constitution ;and Laws of Fraternal Society.

The power accorded to such a society in its charter to alter and repeal its constitution, by-laws, rules and regulations enters into and forms part of the contract of insurance between the society and its members, when the latter, as applicants for membership, promise not only to conform to and abide by the constitution and laws of the society as they then exist, but also as they may thereafter be altered or amended.

### 5. Same—Limitation of Power—Vested Rights.

Such reserve power of amendment and repeal does not, however, give the society any right to adopt a by-law which will divest, impair, or disturb the rights once vested in its members, for such a by-law would be unreasonable.

### 6. Same—Amendment of Constitution—Retroactive Effect.

Where, after a benefit certificate which was declared subject to the provisions of the constitution and by-laws was issued, the constitution and by-laws providing that after the policy had been in force for more than five years immediately prior to the death of the insured the same should be incontestable for any reason except certain enumerated reasons, and after the policy had been in effect for a period of eleven years, the constitution was amended to include "engaging in a hazardous occupation," and it appears that the deceased had engaged in such hazardous occupation, and had been so engaged for more than six

years, although he had not paid the increased premium, but the premiums tendered had been accepted by the company, held, that the provision, "or engaged in a hazardous occupation," did not expressly declare that it should be retrospective, and it should not be given that construction to deprive the insured of a vested right, and apply to a certificate already issued, and does not apply to the certificate under the facts in the case at bar.

Error from District Court, Canadian County; James I. Phelps, Judge.

Action by Katie O'Neil against the Sovereign Camp, Woodmen of the World, as beneficiary in a fraternal insurance certificate. Judgment for plaintiff, and defendant brings error. Affirmed.

Ledbetter, Stuart, Bell & Ledbetter, for plaintiff in error.

A. G. Morrison, for defendant in error.

McNEILL, J.    On or about the 8th day of December, 1906, the Sovereign Camp of the Woodmen of the World issued its policy of insurance on his life to J. P. O'Neil in which Katie O'Neil was named as beneficiary.   On or about the 15th day of December, 1918, said J. P. O'Neil died of pneumonia.   Suit was brought by the beneficiary against the insurance company to recover the amount of the policy of insurance, a copy of the policy being attached to the petition.

The policy provides that when the certificate is issued and accepted, the same is subject to all the conditions on the back thereof, and subject to all the rules and regulations of the fraternity now in force or that may hereafter be enacted, and shall be null and void if the sovereign does not comply with all said conditions and all the rules and regulations of the Sovereign Camp of the Woodmen of the World now in force or which may be hereafter enacted by the camp of which he is a member.

The defendant filed an answer, alleging the deceased had signed an application for insurance stating he was not engaged in any hazardous occupation, one of which was that of switchman, but was engaged in the occupation of car repairer. That about the year 1910 or 1911 the deceased engaged in the occupation of switchman, and followed said occupation to the time of his death.    The defendant pleads that under and by virtue of section 43 of the constitution and by-laws, which provides in substance:

"If any party engages in any hazardous occupation, he shall notify the camp with-

in 30 days and shall pay an additional assessment of 30 cents for each $1,000 in addition to the regular rate, and that any one failing to so notify said clerk and to make said payments, shall stand suspended" —therefore the certificate is null and void, for the reason the insured failed to notify the clerk of the camp that he had engaged in said hazardous occupation of switchman, and failed to pay the additional assessment, and by reason of said fact the insured was suspended. Plaintiff replied, which was by general denial, and further pleaded that the insured's death was caused by pneumonia, and was not the result of his employment, and by reason of said fact the plea of change of occupation or engaging in a hazardous occupation was immaterial. The plaintiff in reply further pleaded that at the time the certificate was issued the constitution and by-laws contained section 68, which provided, in substance, if a certificate had been in force and effect for more than five years immediately prior to the death of the insured, the same should be incontestable for any reason, except the insured died—

"By the hands of the beneficiary or beneficiaries named therein and if it clearly shows that the same was not an accident."

That by reason of said provision in the constitution, the question of hazardous occupation was immaterial.

Upon the trial of the case it was uncontradicted that the insured had paid premiums up until the time of his death, and had never been suspended, and the premiums or assessments had been accepted by the company. It is also admitted that the insured in the year of 1910 or 1911 had changed his occupation from that of car repairer to switchman. The plaintiff offered to prove that the occupation of switchman was not more hazardous than that of a car repairer. Plaintiff offered some evidence tending to prove that the clerk of the camp at Yoakum, Tex., where the deceased was a member, had been notified that the insured was engaged as a switchman, although it is admitted that no additional assessments were ever paid. There were also introduced the constitutions and by-laws of the Woodmen of the World that were effective in 1905, 1907, 1909, 1913, 1915, and 1917, which disclosed that section 43, which had to deal with persons engaged in hazardous occupations, and section 68 regarding the incontestability of the certificate, had been amended.

A jury was waived, and the case was tried to the court, and the trial court rendered judgment in favor of plaintiff and against the defendant. From said judgment the defendant has appealed.

The company, for reversal of the judgment, contends that, the evidence being undisputed that the deceased had prior to his death engaged in the occupation of switchman, which was classed as a hazardous occupation, and under section 43 of the constitution and by-laws had never paid the 30 cents additional for each $1,000 insurance, under the provisions of the policy the certificate sued on became null and void. Without considering whether there was sufficient evidence to support a finding that the clerk of the camp had received notice that the insured had changed his occupation and thereafter accepted the assessments, or the force and effect of said notice, and the acceptance of premiums thereafter, we will discuss section 68 of the constitution and by-laws in force and effect at the time of issuing the policy, which section was as follows:

"After a beneficiary certificate shall have been in force for five consecutive years immediately preceding the death of a member, the Sovereign Camp shall not contest its payment on any grounds whatever, except the sovereign died by the hands of the beneficiary or beneficiaries named therein and it be clearly shown that the same was not an accident."

Under this section of the constitution and by-laws the certificate could only be contested for the following reasons, to wit: That the insured died by the hands of the beneficiary, and it be clearly shown that it was an accident. This court, in the case of Metropolitan Life Ins. Co. v. Peeler, 71 Oklahoma, 176 Pac. 939, held that the incontestable clause of a policy was a binding and valid provision. If we apply this rule to the policy in the case at bar, when it is admitted that the by-laws contain such provision and the insured did not die at the hands of the beneficiary, all other defenses under section 68 of the constitution and by-laws were precluded. However, in the year 1913, or 1914, the by-laws were amended, and section 68 was amended to read as follows:

"When a beneficiary certificate has been in force for five consecutive years immediately preceding the death, while in good standing, of the member holding the same, the payment thereof shall not be contested on any ground other than that his death was intentionally caused by the beneficiary or beneficiaries, or by the hands of justice, or from the direct result of drinking intoxicating liquor."

In the year 1917, section 68 was again amended by adding the additional clause:

"Or engage in hazardous or prohibitory occupation."

Plaintiff in error contends that, after section 68 was amended in the years 1913, 1914, and as it existed in the year 1917, with the clause, "while in good standing,_ of the member holding the same," the company could prove that the insured had engaged in a hazardous occupation, and had not paid the additional assessment, and therefore was not in good standing, and contested the payment upon this ground. Several cases are cited to support this theory where the court construed section 68, as amended in the years 1913 and 1914, to mean that if the insured had engaged in a hazardous occupation and had not paid the additional assessment, he was not in good standing, and therefore the policy could be contested on this ground. Without discussing the correctness of those cases, there are certain rules of construction to be applied in construing statutes and constitutions which we think are applicable: First, the intent of the lawmakers, when ascertained, must govern; second, in ascertaining the intent of the lawmakers all parts of the legislative enactments on the subject, including subsequent enactments, should be construed together and given effect as a whole. Whether it was intended the section as amended in 1913 or 1914 might be construed to apply to a person who changed to a hazardous occupation and failed to pay the additional assessments would be at least doubtful if the society had not amended the section in 1917 to include this class of cases, to wit:

"Engaged in hazardous or prohibited occupation."

This court in construing life insurance policies, has adhered to the following rule:

"If the language used in a policy is ambiguous and susceptible of two constructions, one of which will give the policy effect, and the other render it void, that construction should be adopted which will make the policy effective." Friend v. Southern States Life Ins. Co., 80 Okla. 76, 194 Pac. 204.

If we apply this principle of law to the certificate, it is evident that the framers of the constitution considered this question doubtful as to whether the amendment in 1913 or 1914 would include this kind of a defense, otherwise they would not have amended the same in 1917. The constitution being subject to two constructions, one making the policy void, the other valid, the same should be given the construction making it valid. Therefore, under the policy and constitution and by-laws prior to the amendment in 1917, this defense was not available.

The next question for consideration is, What is the force and effect of the amendment to section 68 in the year 1917, which provides that the policy might be contested if the person engaged in a hazardous or prohibitory occupation? This policy was issued in 1906. In 1910 or 1911, the insured changed his occupation. He did not comply with the section regarding paying the additional assessments, but the premium having been accepted, and by virtue of section 68 of the constitution, this defense was precluded, and his right became vested. Could the society amend the constitution so as to deprive him of this vested right, and defeat the payment of the certificate?

This court, in the case of Hines v. Modern Woodmen of America, 41 Okla. 135, 137 Pac. 675, in discussing fraternal benefit societies and the force and effect of the constitution and by-laws and the right and authority to amend the same, in the syllabus, par. 3, stated as follows:

"Such reserve power of amendment and repeal does not, however, give the society any right to adopt a by-law which will divest, impair, or disturb the rights once vested in its members, for such a by-law would be unreasonable."

The Supreme Court of Colorado, in the case of Sawyer v. Head Camp, Woodmen of the World, 177 Pac. 968, in discussing this exact question, stated as follows:

"Where, after a benefit certificate, which was declared subject to the provisions of the constitution of a fraternal insurer, was issued, the constitution, which had declared that a member in good standing who suffered disability rendering him unable to pay dues should remain in good standing during disability, was changed, and the new provision provided that the member should remain in good standing for only three months, held, that, as such provision did not expressly declare it should be retrospective, it should not be given that construction, and cannot apply to the certificate already issued."

It would seem unreasonable, after the insured had paid the premiums for a period of 11 years up to the year 1917, and under the constitution and by-laws the policy was incontestable except for certain reasons, and the insured's right became vested,

that the company could thereafter, by amendment to the constitution, take away from him the vested right, and be permitted to make a defense by reason of a change of occupation that occurred in the year 1911, thereby making said provision in the constitution retrospective. Having reached this conclusion, the other assignments of error become immaterial.

For the reason stated, the judgment of the court is affirmed.

HARRISON, C. J., and JOHNSON, ELTING, and NICHOLSON, JJ., concur.