## EUREKA RESERVE LIFE INSURANCE CO. v. GLAZNER.

No. 16153—Opinion Filed Dec. 8, 1925.

**1. Insurance—Fraternal Insurance—Right to Alter Constitution and By-Laws—Limitations.**

A general reservation in the Constitution and by-laws of a fraternal beneficial association is subject to the implied condition that the changes, as applied to existing members, shall be reasonable, and not destructive of vested rights or the obligation of existing contracts. The right to make changes in the constitution and by-laws which would otherwise interfere with vested rights or impair the obligation of contracts, rests on contract, and if a member has not agreed to be bound by future changes, they are inoperative as to him.

## 2. Same—Invalidity of Attempted Alteration—Right to Recover for Expense of Operation.

Where the purported minutes of a meeting show that "pursuant to a call of the president, E. J. Knight, of the Western Aid Association, the directors of said association met on March 14, 1924, for the purpose of amending article 3, section 3 of the by-laws, the amendment being to dispense with the operating clause entirely, since the same has proven a hazardous risk and also very expensive to the members. The foregoing was carried by a unanimous vote of the directors, a quorum being present. Western Aid Assn., by M. B. King, Jr., Secy Treasurer—" held, at such meeting the directors were without authority to repeal or "dispense with" par. 7 of sec. 22 of said by-laws, and this recital in the minutes constitutes no defense to an action to recover on a certificate of insurance, the indemnity provided under section 22, par. 7 of such by-laws.

## 3. Same—Action on Certificate—Amendment of By-Laws as Defense—Burden of Proof.

The by-laws of the Western Aid Association, a fraternal beneficial association under the laws of Oklahoma, contained the following provision (section 30): "The constitution and by-laws of the Western Aid Association may be amended or altered at any time, at a regular meeting of the members of this association, or at any meeting of the board of directors when such alteration or amendment in writing has been duly submitted to each director, at least ten days prior to such meeting." Held, where, as a defense to an action by a member of the association to recover on a certificate of insurance, an amendment to such by-laws is pleaded and relied upon to defeat recovery, the burden is upon the defendant to prove the method of submitting amendments has been followed and the provisions of section 30 fully complied with.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by C. G. Glazner against the Eureka Reserve Life Insurance Company, on two life insurance policies containing clauses wherein the insurer agrees to pay the insured $150 on each policy as hospital and operating fees in the event the insured is compelled to undergo a major operation. Judgment for plaintiff, and defendant appeals. Affirmed.

W. E. Disney and John Wheeler, for plaintiff in error.

L. A. Pelley, for defendant in error.

Opinion by RUTH, C. The parties hereto will be designated as they appeared in the trial court.

It appears from the record that the "Western Aid Association" incorporated under the laws of this state presumably as a fraternal society, for the purpose of obtaining the advantages of the insurance laws of this state relative to fraternal societies. The exact date of its incorporation is not disclosed by the record, but as the Constitution and by-laws were adopted March 28, 1923, we assume it was incorporated about that date. On March 29th and May 25, 1923, said association issued to the plaintiff two certain certificates of insurance, to wit: Certificate No. 1, in group No. 1 and certificate No. 1 in group No. 2, respectively, wherein and whereby said association agreed and bound itself to pay to the insured the sum of $150 on each of the said contracts of insurance in case the insured underwent a major operation after six months from the date certificates were issued, provided said certificates were kept in force and effect. The certificates having been kept in force and effect, the plaintiff did undergo a major operation more than ten months, to wit, March 27, 1924, after the issuance of the certificates, and gave the required notice of such operation and requested payment on February 29, 1924. The State Insurance Board of the state of Oklahoma made a ruling that all companies operating under the "fraternal laws" should immediately comply with those laws, and the directors of the Western Aid Association deemed it inadvisable to even attempt to meet the conditions imposed, and on March 27, 1924, the Western Aid Association entered into an agreement with the defendant, Eureka Reserve Life Insurance Company, whereby the defendant "assured all the assets as well as the liabilities contained in the certificates of insurance as issued by the Western Aid Association and such amendments as contained in its by-laws." This agreement was approved by the State Insurance Commissioner on April 7, 1924.

Plaintiff mailed proper notice of the operation to defendant and on May 5, 1924, the defendant sent plaintiff a letter in which it states it "did not assume any liability whatever as to major operations," and in which it states further:

"We have endeavored to be fair with you in this matter, going into details as to our connection with same, all of which apparently has made no impression upon you, so we do not care for any further controversy in this matter."

Evidently the defendant's letters did make some impression upon plaintiff, as within ten days he filed his suit and recovered judgment in the sum of $300, from which judgment defendant appeals.

The defense set up in the defendant's answer is that the Western Aid Association amended its by-laws on March 14, 1924, by striking therefrom the clause wherein it agreed to pay the plaintiff $150 on each certificate of insurance in case he underwent a major operation after six months from the issuance of the certificates, and the only error urged is in the following words and figures:

"The Western Aid Association, being a fraternal insurance association, had the right to amend its by-laws so as to affect the policy, and the amendment made by it on the 14th day of March, 1924, was a valid binding obligation upon the part of the plaintiff, C. G. Glazner, and the operation clause of the policy is thereby eliminated, and the plaintiff is bound thereby, and cannot recover." Citing cases.

The constitution and by-laws of the Western Aid Association provide that the members of the Grand Lodge shall consist of a president, vice president, secretary, treasurer, three directors, and such other members as may from time to time become eligible and placed in that lodge. As the constitution and by-laws made no provision for representation in the Grand Lodge from any subordinate lodge, the association, at the very outset, does not impress us very favorably as a bona fide fraternal society. Sections 3 and 4 provide the directors and officers shall be elected annually on the first Tuesday of February of each year, beginning on the first Tuesday of February, 1924.

The answer of defendant fails to set forth who were the officers and directors at the time of the incorporation of the association, or who were the officers and directors on March 14, 1921, or whether an election was held on the first Tuesday of February, 1924, after written notice, notwithstanding section 5 provides that each member shall be given written notice of the date of the annual election, and all officers and directors shall be elected by a majority vote of the members present, in person or by written proxies.

Section 6 constitutes the board of directors the governing body, and a majority shall constitute a quorum. Under this and section 7, two persons have absolute and complete control of all the business and interests of this so-called fraternal society.

Section 8 provides the directors shall meet at the call of the president or on written request of a majority of the directors, and notice of the meeting shall be given to each director by the secretary in writing, and further provides that all meetings of the board of directors shall be held in Woodward, Okla.

The minutes of the meeting, at which it was alleged the by-laws were amended, fails to show that notice was given to the directors, and the record shows the alleged meeting was not held in Woodward, but in Oklahoma City, and while section 10 provides that the president shall preside at all meetings of the board of directors * * * and sign the minutes of all meetings at which he has presided, the minutes of this alleged meeting are not signed by the president, vice president, or anyone shown to have been elected by the directors to preside, but is signed by the secretary alone.

Section 22, with which we have to deal more directly, empowers the association (any two of the board of directors) to issue certificates of indemnity in the following cases, viz.:

"(1) In case of death. (2) In case of loss by accident of one or both eyes. (3) In case of loss by accident of one or both hands. (4) In case of loss by accident of one or both feet. (5) In case of total and permanent disability caused involuntarily from accident or disease. (6) (Immaterial in this case.) (7) In case it becomes necessary for any member to undergo any major operation, and such member does undergo such major operation, the association will pay to such member the sum of $150 as operating and hospital fees."

Under section 25, all white persons, male or female, between the ages of 12 years and 55 years, in good health and engaged in "normal" occupations, are eligible to membership. They made no distinction between the suckling and the superannuated. You were eligible with but one foot out of the cradle, or with one foot in the grave, and the association was so liberal that it promised that if the infant joined at the age of twelve years and kept its dues paid, plus 14 assessments each year, he or she might at the age of 70 years draw down one-tenth of the sum paid in, not to exceed $1,000, and not less than $300, spread over a period of ten years, and this sum covered and exhausted the principal and left nothing for the undertaker.

Section 30 provides for amending the constitution and by-laws as follows:

"The constitution and by-laws of the West-

ern Aid Association may be amended or altered at any time, at a regular meeting of the members of this association, or at any meeting of the board of directors, when such alterations or amendments in writing have been duly submitted to each director, at least ten days prior to such meetings. In order to amend or alter the constitution or by-laws, any proposed alteration or amendment must receive a majority vote of the members present, or if adopted by the board of directors, the same must receive a majority of the total members of the directors of this association."

Under this section the defendant insists the board or any two of the three had the power to "dispense with" the clause giving benefits to a member who had undergone a major operation. If this be true, then any two directors might abolish the clauses providing for total disability, loss of feet, loss of hands, loss of eyes, or "abolish" the death benefit clause.

The incorporators of the association were E. T. Knight, Homer L. Head, M. D. King, Jr., Mrs. Homer L. Head, Gill H. King, W. H. Bailey, and Frank E. Moseley. As before stated in this opinion, the record fails to show who the officers or directors were during 1923, but the record does show the following:

"A meeting of the directors of the Western Aid Association was called January 28, 1924, by E. T. Knight, pres., a quorum being present as follows: E. T. Knight, pres., M. D. King. Jr., secy-treas., Mrs. E. T. Knight, director, and Mrs. M. D. King, Jr., director."

Nowhere in the constitution or by-laws are the president and secretary-treasurer made ipso facto members of the board of directors, nor is there conferred upon them any voice or vote on the question of amendments thereto, notwithstanding we find Knight making motions to amend the by-laws in several particulars, by adding conditions thereto not in the original certificate of insurance as follows (the emphasized words showing the additions):

"For loss of one or both hands by severance at or above the wrist.

"For loss of one or both feet, by severance at or above the ankle.

"The irrevocable loss of one or both eyes by accident."

These motions made by Knight were seconded by King, and their wives voting with them, the motions were carried unanimously, and the minutes of the meeting were not signed by the president as required by section 10 of the constitution and by-laws.

Under the original by-laws and certificate of insurance, in addition to dues and regular monthly assessments, two additional assessments were authorized, and these assessments were placed at "one dollar and one cent for each year of the insured's age." Thereby a child of 12 years, in addition to its dues and regular assessments, must pay two assessments of $12 each, plus one cent, and the man who was 55 years of age must pay two extra assessments of $55 each, plus one cent, and the period within which these assessments were to be paid was, by these directors, reduced from 20 days to ten days after notice. Furthermore, while the original by-laws, section 22, par. 1, provides for indemnity "in case of death," this was to be changed to read:

"This association shall not be liable under any membership certificate for death of a member while in any underground mine."

Under the construction attempted to be given to the by-laws relative to the right to alter or amend or "abolish" the same, they might have changed the death indemnity to read: "The association will not be liable for the death of any member unless the death occurred while the member was actually engaged at the time in marine aerial navigation."

It appears the Knights and Kings were the dominant pieces on this benevolent, fraternal society chess board, and the contributing members were the pawns. At this meeting of the alleged directors, they did not try to amend the section indemnifying against a major operation. These amendments were to go into effect after February 8, 1924, which of necessity must have been after the first Tuesday in February, 1924, when an annual election of officers should have been held.

No election of officers appears to have been held, but the record fails to show any election was held, but the record discloses according to the minutes of an alleged meeting held on March 14, 1924, the following:

"Pursuant to a call of the president, E. T. Knight of the Western Aid Association, the directors of said association met on March 14, 1924, for the purpose of amending article 3, section 3 of the by-laws, the amendment being to 'dispense with' the operation clause entirely since the same has proven a hazardous risk and also very expensive to the members. The foregoing was carried by a unanimous vote of the directors a quorum being present.

"Western Aid Association,

"By M. B. King. Jr., Secy-Treas."

The minutes were not signed by the presi-

dent as required by the constitution; there is no showing that the proposed amendment was submitted in writing to the directors ten days before its submission, or that any amendment was ever submitted in writing; any motion made or seconded, who the directors were or who voted thereon, but we assume the "lady" voted with her "Knight," and the Queen with her King, in an effort to deprive the pawns of hospital bills for major operations.

It will be observed the purpose of the meeting was to amend "article 3 of section 3" of the by-laws, but we find no "article 3" therein, and section 3 only provides that the directors and officers of the association shall be elected annually and hold office until their successors are elected and qualified. A subsequent section places the entire operation of the association in the hands of these officers, and if it was the intention to "abolish" these clauses, we can agree with the Knights and the Kings, that (to use their own words) "the same had proven a hazardous risk and very expensive to the members."

The indemnity provided for one undergoing a major operation is found in paragraph or subsection 7 of section 22, and the minutes make no reference to this paragraph and section, and if written notices had been sent out as provided by the by-laws, that they intended to "abolish" article 3 in section 3, the same would not have authorized them to "abolish'" paragraph 7 of section 22, and yet it is upon this unsigned recital in the minutes that the defendant, having acquired all the assets and assumed all the liabilities of the Western Aid Association, attempts to escape liability under the two policies held by the plaintiff.

Defendant, to support its position, cites opinions of this court to the effect that:

"Where the by-laws of a fraternal beneficiary society provided the manner in which a change of beneficiary may be effected by a member of the society, the method so provided is binding upon the members and is exclusive." Citing Modern Woodman v. Terry, 54 Okla. 308, 153 Pac. 1124, and other cases, but the question of change of beneficiaries is not in this case and the cited cases are not germane to the issue here.

Defendant contends the certificates issued and the constitution and by-laws of the association constitute a contract between the assured and the association. As a general proposiiton, this is true, but we cannot agree that the terms of the contract may be abrogated by the passage of a resolution, which,

if sustained, will divest, impair or disturb the vested rights of its members, and while it is contended that the clause permitting amendments is binding upon the members, and numerous cases are cited, an examination of the cases discloses that in each and every cited case there was a clause in the contract whereby the assured specifically agreed to be bound by any amendment regularly adopted.

In Fullenwider v. Royal League, 180 Ill. 621, 54 N. E. 458, extensively quoted from by defendant, it is held:

"Where the contract contains an express provision reserving the right to amend or change the by-laws, it cannot be doubted that the society has a right so to do, and where, in a certificate of membership, it is provided the members shall be bound by the rules and regulations now governing the council and fund, or that may thereafter be enacted for such government, and those conditions are assented to and the member accepts the certificate under the conditions provided therein, it is sufficient reservation of the right of the society to amend or change its by-laws."

In Steen v. Modern Woodman of America, 17 A. L. R. 406, citing Fullenwider v. Royal League, supra, the identical language was used.

In Hobbs v. Association (Iowa) 47 N. W. 983, the court, considering the question of whether or not the insured is bound by a change of by-laws, said:

"Whether they will be or not will depend upon the terms of their contract. If that provides that members shall be bound by all the articles and by-laws which may at any time be adopted, we know of no reason why it is not valid."

In Farmers Mutual Insurance Co. v. Kinney (Neb.) 90 N. W. 926, it is held that it must be specifically provided the assured will be bound by any change in the by-laws, and that assured specifically accepts the terms in his certificate.

Home Benefit Order v. Jones, 5 Okla. 598, 50 Pac. 165, cited in defendant's brief, has no application to the facts in this case. There the question was whether or not Jones was a member, as his application had never been forwarded to the home office or accepted or approved by the grand officers at the time of the death of Jones.

A careful examination of the record, embracing as it does the constitution and by-laws, the application of the plaintiff, and the certificates issued to him, fails to disclose any provision whereby the plaintiff

became bound by any change in the by-laws, and this court, in affirming the judgment in Sovereign Camp, W. O. W., v. O'Neil, 86 Okla. 16, 205 Pac. 756, and citing with approval 'Hines v. Modern Woodman of America, 41 Okla. 135, 137 Pac. 675, L. R. A. 1915a, 264, in discussing fraternal benefit societies and the force and effect of the constitution and by-laws and the right and authority to amend the same, says:

"Such reserve power ·of amendment and repeal does not, however, give the society any right to adopt a by-law which will divest, impair or disturb the rights once vested in its members, for such a by-law would be unreasonable."

This principle appears to be firmly established in all the states where the question has been passed upon.

29 Cyc. 76, citing authorities, lays down the rule as follows:

"A general reservation of the right to alter the constitution and by-laws is subject to the implied condition that the changes, as applied to existing members, shall be reasonable, and not destructive of vested rights or the obligation of existing contracts. The right to make changes in the constitution and by-laws which would otherwise interfere with vested rights or impair the obligation of contracts rests on contract, and if a member has not agreed to be bound by future changes they are inoperative as to him."

Even though the proposed amendment were such as could have been made under the constitution, it was not submitted in writing, and it does not appear it was submitted even as a resolution, and it has been held that the by-laws of a fraternal beneficial society cannot be changed by resolution. 29 Cyc. 21; Red Jacket Tribe No. 28 v. Gibson, 70 Cal. 128, 12 Pac. 127; Flaherty v. Portland Longshoreman's Benev. Soc., 99 Me. 253, 59 Atl. 58.

Furthermore, the alleged resolution did not state when it became effective, and in the absence of such a provision, even if otherwise complying with the law, it could not have any retroactive effect.

In Bacon on Benefit Societies, section 187, the rule is stated as follows:

"It is a settled rule of construction that laws will not be interpreted to be retrospective unless by their terms it is clearly intended to be so. They are construed as operating only on cases or facts which come into existence after the laws were passed. * * * In fact, so great is the disfavor in which such laws are held, and so general are they, that the courts will not construe

any law, no matter how positive in its terms, as intended to interfere with existing contracts or vested rights, unless the intention that it shall so operate is expressly declared or it is to be necessarily implied." See, also, 29 Cyc. 72.

This court in Sovereign Camp W. O. W. v. O'Neil, supra, citing with approval Sawyer v. Head Camp. W. O. W., 65 Colo. 522, 177 Pac. 968, adopts the rule above laid down, and the same is the fixed law of this state.

It would appear from a very careful consideration of the record, that the Insurance Board of the state of Oklahoma, having on February 29, 1924, issued its order directing the association to comply with' the state laws relating to fraternal insurance societies, which laws this association could not comply with and deemed it inadvisable to even attempt to comply with, Knight and King, as president and secretary-treasurer, respectively, neither of whom is shown to be a director, met with their respective wives, who are named in the minutes as directors, and without any apparent effort to comply with the constitution and by-laws, sought to amend the same by reducing the liability of the association to its members so they might "get out from under" a collapse, and by reason of the supposed reduction of liability, persuade some other company to take over its assets and liabilities.

The defendant acquired the assets and assumed the liabilities of the Western Aid Association on March 27, 1924, and the attempt to amend article 2 of section 3 of the by-laws by "dispensing" with the "operation clause," being without authority of law and inoperative as to this plaintiff, the defendant assumed the liability to the plaintiff under his certificates of insurance, and the judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 29 Cyc. pp. 76, 77; anno. 8 L. R. A. (N. S.) 521; 17 A. L. R. 423; 19 R. C. L. pp. 1204-1207; 3 R. C. L. Supp. p. 1004; 4 R. C. L. Supp. p. 1314. (2) 29 Cyc. p. 20. (3) 29 Cyc. p. 232.