## AMERICAN INSURANCE UNION v. MEAD.

No. 19460. Opinion Filed Feb. 5, 1929.

94

C. H. Tully and B. W. Gearheart, for plaintiff in error.

John T. Cooper, for defendant in error.

FOSTER, C. This action was originally commenced in the district court of McIntosh county by Tom C. Mead, as plaintiff, for damages by reason of the cancellation of a certain contract of insurance which was originally issued by the Home Protective Association, of Springdale, Ark., which company was later merged with the American Insurance Union, an Ohio corporation. A trial was had before the court without the intervention of a jury, which resulted in a judgment in favor of Tom C. Mead for $530.91, from which judgment the American Insurance Union appeals. Mead will hereafter be referred to as plaintiff, and the company as defendant.

The record discloses that, on June 15, 1917, plaintiff made application to the Home Protective Association for a membership certificate. In the application he accepted the by-laws then in force and thereafter to be enacted by said association, and agreed to become a member of a roll not exceeding 1,000 members, and that all assessments for redemption of certificates be made against the members of that roll only. Pursuant to that application, the Home Protective Association issued its certificate, payable to the plaintiff's beneficiary, which contained the following conditions:

"The sum of $100 will be paid should the death of the applicant occur within the first six (6) months after the date of this certificate. This certificate will increase $12.50 per each calendar month after the first six (6) months for and during a term of 72 months thereafter, or until it reaches the maximum sum of $1,000, conditioned only that prompt and due payments by certificate holders be made to the home office of the Home Protective Association of any and all assessments that may be made under the rules as set forth in the application for said certificates and by-laws of said association. Provided, that this proceeding be brought after the lapse of one year from date of death of the member.

"Accident Benefit. Should the certificate holder, after the date of this certificate, through accidental means only, lose the entire sight of one or both eyes, or one or both hands, or one or both feet, then this association will upon satisfactory proof and surrender of this certificate pay the value of the same to the certificate holder (if not otherwise provided) conditioned that all assessments against said certificate have been paid and the member is in good standing."

The by-laws of said association provided that the assessments, after the issuance of the certificate, chould increase one cent per month for a period of 84 months, at which time it would reach a maximum which should continue during life on good standing of the member. The maximum in the case of plaintiff amounted to $1.36, which was reached in July, 1924.

On the 1st day of November, 1918, the Home Protective Association entered into a merger contract with the defendant, which provided, among other things, as follows:

"1. The American Insurance Union shall cause to be collected all the contributions of the members hereby consolidated. which contributions shall be set apart and shall constitute a fund to be known as the Home Protective Fund of the American Insurance Union, out of which said fund the said American Insurance Union shall pay all death and disability claims arising among the said members hereby consolidated in the same amount and in the same manner and under the same conditions as the same would have been payable under the articles of incorporation and the by-laws of the Home Protective Association and the by-laws adopt-

ed by the board of directors thereof, as the same are on the thirtieth day of November, nineteen hundred and eighteen; and after the payment of said claims the amount remaining in said fund out of each of said assessments for the payment of the said claims, shall be paid into the general expense fund of the American Insurance Union.

"2. The American Insurance Union shall not be legally obligated to pay the claims arising among the membership hereby consolidated in any amount in excess of the amount due the member or his beneficiary or beneficiaries under the by-laws of the Home Protective Association and the by-laws of the board of directors thereof.

"3. Each of the members hereby consolidated shall pay to the American Insurance Union the assessments as provided in the by-laws of the Home Protective Association and the by-laws of the board of directors thereof, provided that in no event shall said members pay less than one assessment for each and every calendar month and payable on or before the last day thereof, said assessments to be paid on the increasing scale provided in the said by-laws until such time as the said member shall reach the maximum assessment provided, and thereafter he shall pay to the American Insurance Union each and every calendar month a sum sufficient to meet the cost of his insurance on the basis of the American Experience Table of Mortality, with interest at four per cent., or upon such other standard table of mortality and plan as may be deemed necessary by the National Board of the American Insurance Union, to meet the cost of his insurance. * * *

"6. It is hereby understood and agreed that the members hereby consolidated shall be subject to the constitution and laws of the American Insurance Union now in force, or that may hereafter be in force, except as herein otherwise provided."

This merger contract was entered into pursuant to section 9475 of the General Code of the state of Ohio, which provides, in substance, that no fraternal society shall merge with another unless the conditions of such merger are fully set forth in writing together with a financial statement and an approval by a two-thirds vote of the governing body of each society, the same to be approved by the Superintendent of Insurance of that state, all of which was done; also, the Commissioner of Insurance of Arkansas approved the same.

The defendant caused this contract to be printed and attached thereto a rider, which was sent by letter to each of the members of the Home Protective Association. The rider provided, in substance, that if the certificate holder made his payments as provided in the contract of merger and complied with the provisions of the constitution and laws of the American Insurance Union, now in force or hereafter to be enacted, his benefit certificate was assumed by the defendant upon certain conditions, as follows: That the American Insurance Union would pay benefits as provided by the by-laws of the Home Protective Association, but in no event to be liable in excess of the amount provided for therein; that the defendant should not be liable in excess of the net amount realized from one assessment on the members of the roll of which the policy-holder was a member; and further provided that the merger contract, the rider itself, the by-laws of the Home Protective Association, and the laws of the American Insurance Union, should constitute the contract between the defendant and the certificate holder.

One of these riders was sent to the plaintiff and he acknowledged receipt of the same, although there is some question about whether or not he signed the receipt.

The plaintiff continued to pay his dues as provided by the constitution and by-laws of the Home Protective Association until July, 1924, when the maximum, as provided in said by-laws, was reached.

About the 16th of June, 1924, the defendant notified the plaintiff that his maximum would be reached on July 1st, and therefore, under the contract of merger, it would be necessary for him to pay a sufficient sum to meet the cost of his insurance on a basis of adequate rates as provided in the merger contract, and was offered three options: (1) He could take a supplemental standard step rate policy, which would cost him $2.55 a month; or (2) a whole life level rate policy, which at his age would cost $6.50 a month; or (3) he could continue to pay his maximum of $1.36, which would purchase him a level rate policy amounting to $289.99. Each and every one of these options so offered the plaintiff contained different provisions than those in his original policy. No one of the offers contained the accident clause as in the original policy. The plaintiff did not reply to this letter, but sent to the company his dues of $1.36, and thereupon the company assumed that he desired to accept the level rate policy, and canceled his original policy and issued one for $289.99, which was sent to the plaintiff and retained by him.

The plaintiff brings this action for damages by reason of the cancellation of his original policy, and alleges that he is entitled to damages in the sum of $1,000, the face of the original certificate, and $500 as punitive damages.

It is first contended by the defendant that it had a right to cancel the policy, because the evidence shows that the assessment of $1.36 was not adequate to carry plaintiff's insurance, and that, according to the merger contract, the company had a right to increase the rate after the maximum had been reached.

It appears to be admitted that fraternal insurance societies have a right to increase their rates when the same are not sufficient to pay the benefits as provided in the contracts. Knights of Pythias v. Mims, 241 U. S. 574, L. R. A. 1916F, 919; Continental Beneficiary Ass'n v. Arbogast, 65 Okla. 83, 163 Pac. 512; Williams v. American Ins. Union (Kan.) 191 Pac. 291.

The defendant next contends that the plaintiff is bound by all the terms of the merger contract. While there is some dispute in the record as to whether the plaintiff received and accepted the merger contract, we think, under the circumstances in this case, he was bound by the terms thereof. Eureka Reserve Life Ins. Co. v. Glazner, 115 Okla. 180, 242 Pac. 181; Sovereign Camp, W. O. W., v. O'Neil, 86 Okla. 18, 205 Pac. 755.

We also believe plaintiff was bound by the constitution and by-laws of the Home Protective Association, as well as the by-laws of the American Insurance Union. But, after a diligent reading of all the provisions, we have been unable to find any provision that authorized the defendant to cancel the contract and issue a new certificate in lieu thereof. It is true the record discloses that in all probability the reason of the refusal to accept the options was because the rates were increased, but we do not find where the company ever offered to continue the policy held by the plaintiff in force and effect if he would pay an additional assessment, which, if done, would no doubt have authorized the defendant to cancel the policy for nonpayment of such dues.

In each option, the defendant offered plaintiff a new or substitute contract, and, while plaintiff's refusal may have been based upon the higher rates, we believe it was the duty of the company under the provisions of this merger contract to have given him an option to continue his present contract in force, with the terms and conditions· exactly as originally issued, upon the payment of an additional assessment. This the company did not do, and we therefore believe that it had no right to cancel its contract.

The defendant next contends that there is no showing as to what an assessment would have been at the time of the forfeiture against the members of the roll to which the plaintiff belonged. This is not a case in which there is an attempt to collect by a beneficiary for the amount of the policy as in the cases relied upon by the defendant. Continental Beneficiary Ass'n v. Arbogast, supra, and cases therein cited.

Even if we accept the rule as announced in the last cited cases, we do not believe the same are in point with the case at bar. As the plaintiff had reached his maximum and is now suing for damages for the cancellation of his contract, it will be assumed that at his death, if the policy had continued in force and effect, it would have been worth the face of the policy, to wit, $1,000.

While the record is not clear, we think the court, in arriving at the amount of damages, followed the rule announced in the case of American Ins. Union v. Woodard, 118 Okla. 248, 247 Pac. 398, which we believe is correct.

From an examination of the entire record, we believe the court committed no prejudicial error, and there is no serious objection that it did not determine the amount of damages as laid down by this court in the cases of American Ins. Union v. Woodard, 118 Okla. 248, 247 Pac. 398, and American Ins. Union v. Woodard, 118 Okla. 243, 247 Pac. 401.

The judgment of the trial court is therefore affirmed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Mutual Benefit Insurance," 45 C. J. §62, p. 73, n. 8.