## BARNETT v. MERCHANTS' LIFE INS. CO.

No. 12113—Opinion Filed May 23, 1922.

Rehearing Denied July 25, 1922.

(Syllabus.)

1. **Insurance — Life Insurance — Contract —Statutory Provision—Construction.**

Section 3470, Revised Laws 1910, providing: "That the policy, together with the application therefor, a copy of which application shall be indorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties"—held, that the application and the policy of insurance issued pursuant thereto constitute the entire contract of insurance, and an agreement to modify or restrict the terms of the policy by attaching a rider thereto violates the statute and is void.

2. **Same—Liberal Construction of Life Insurance Policy in Favor of Insured.**

Where a life insurance policy is open to two constructions, one favorable and one unfavorable to the insured, the former will be

adopted in order to make effective the primary obligation of the contract.

3. **Same—Strict Construction As Against Insurer.**

The provisions of a life insurance policy exempting the insurer from liability under certain conditions will be construed strictly against the insurer.

4. **Same—Exemption from Liability—Death in Military Service.**

Where the insured "engaged in military service," and there is a provision in the policy exempting the insurer from liability under a clause in the policy providing: "This policy is unrestricted as to travel, residence or occupation of the insured, except that if at any time the insured shall engage in military or naval service in time of war (the militia not in active service excepted) he shall secure the company's written consent and pay the extra premium therefor, as from time to time fixed by the company. In the event of noncompliance with this requirement the company's liability hereon in case of death of the insured while in such service will be limited to an amount equal to the legal reserve hereon at date of death." It appears from the record the insured died within two days of broncho-pneumonia after landing at Brest, France, and it was stipulated by the parties to the action that the evidence does not show that the insured died as the result of his military service nor that his military service contributed to his death. That broncho-pneumonia is a disease that is contracted as well out of the army as in it. Held, that the insurer was not exempted from liability.

Error from District Court, Bryan County; George S. March, Judge.

Action by Alice Barnett against the Merchants' Life Insurance Company of Des Moines, Iowa, to recover $2,500 on life insurance policy. Judgment for the defendant, and plaintiff brings error. Reversed and remanded, with directions.

Stephen C. Treadwell, Hatchett & Semple, and Porter Newman, for plaintiff in error.

Hatchett & Ferguson, Utterback & MacDonald, Keaton, Wells & Johnston, and Stuart E. Knappen, for defendant in error.

KENNAMER, J. Alice Barnett commenced this action against the Merchants' Life Insurance Company of Des Moines, Iowa, in the district court of Bryan county to recover $2,500 alleged to be due on a life insurance policy. The cause was tried to the court without a jury and judgment entered in favor of the Merchants' Life Insurance Company. The parties appear here as they appeared in the trial of the cause and will be referred to as plaintiff and defendant.

The plaintiff, Alice Barnett, prosecutes this appeal to reverse the judgment of the trial court in favor of the Merchants' Life Insurance Company, defendant. The material facts necessary to be considered for a determination of this appeal in substance are: That on January 5, 1918, the Merchants' Life Insurance Company, in consideration of a premium of $104.08, insured the life of Cecil M. Barnett for $2,500. Alice Barnett, mother of the insured, was named as beneficiary. The insured, Cecil M. Barnett, died September 28, 1918, proof of his death being furnished to the defendant company. The insured. Cecil M. Barnett, subsequent to the issuance of the policy sued on, enlisted in the Marine Corps of the United States Army, the date of his enlistment being June 28, 1918. In September, 1918, the insured under military orders was transported to France, landing at Brest about the 25th day of September, 1918, and died of broncho-pneumonia within two days after landing. On the date of the death of the insured the United States was engaged in war with the German Empire and the Empire of Austria-Hungary. It was admitted by the respective parties to the action that Brest is a seaport city of France and was used by the American Expeditionary Forces as a landing place. That at the time of the death of the insured it was at least 100 miles from the fighting lines of the opposing armies. That the insured was sick with broncho-pneumonia, which he contracted on the high seas, when he landed at Brest, France. It was stipulated as follows:

"It is agreed that the testimony in this case does not show that Cecil M. Barnett died as the result of his military service, nor that his military service contributed to his death." (C. M. p. 189.)

It was further agreed at the trial that:

"We will agree that broncho-pneumonia is a disease that can be contracted as well out of the army as in it, and that it was on the mainland of the United States as well as in France at that time, at the time Cecil M. Barnett died, and that at the time Cecil Barnett died, that it existed on the mainland of the United States as well as beyond the seas and in France, and that he died of broncho-pneumonia." (C. M., p. 176.)

The trial court found that the insurance contract consisted of the original policy, the application therefor, and rider No. 137 attached thereto. The application for the policy contains the following question and answer:

"Do you agree that if a policy of insurance is issued to you the said policy shall be conditioned upon the terms of a rider attached thereto, which rider shall provide that military, naval, naval reserves, national guard, militia, aerial, and the submarine service in time of war, or any service allied thereto or connected therewith in time of war, are risks not assumed under said policy, and that if death occurs while you are so engaged, or as a result of any such service, the liability of the company on said policy shall be limited to the legal reserve thereon, less any indebtedness to the company; and that in the event of your engaging in any service aforesaid in time of war, or if as a civilian you engage in any allied occupation involving an association with military or naval maneuvers in time of war, no disability benefits or double indemnity shall at any time thereafter accrue under said policy—Yes."

The printed form of the policy, being the second paragraph on the second page thereof, is as follows:

"Subject to rider form No. 137 attached hereto.

"This policy is unrestricted as to travel, residence or occupation of the insured, except that if at any time the insured shall engage in military or naval service in time of war (the militia not in active service excepted) he shall secure the company's written consent and pay the extra premium therefor. as from time to time fixed by the company. In the event of noncompliance with this requirement the company's liability hereon in case of death of the insured while in such service will be limited to an amount equal to the legal reserve hereon at date of death."

Rider form No. 137, as follows, was attached to the policy:

"Merchants' Life Insurance Company.

"Supplement to Policy No. 72552.

"Military, naval, naval reserve, national guard, militia, aerial, and submarine service in time of war, or any service allied thereto or connected therewith in time of war, are risks not assumed under the policy, and if death occurs while insured is so engaged, or as a direct result of any such service within six months after termination of such service, the liability of the company shall be limited to the legal reserve on this policy less any indebtedness to the company. Every clause of the policy in any way inconsistent with this clause is hereby modified in accordance herewith. In event of the insured engaging in any service aforesaid in time of war. or if as a civilian he engage in any allied occupation involving an association with military or naval maneuvers in time of war, no disability benefits or double indemnity benefits shall at any time thereafter accrue under this policy, and the policy premium shall be, after the next policy anniversary. reduced by the amount charged for said benefits."

The legal questions involved in this action arise out of the force and effect of the question and answer in the application as herein set out, also the military clause found on the second page of the policy and the supplement to the policy in rider form No. 137. We are clearly of the opinion that the respective obligations of the parties to the contract of insurance must be determined without regard to the provisions contained in the rider or the agreement to attach the rider in the application. Section 3470, Revised Laws 1910, in part provides:

"No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless the same shall at least provide in substance the following: (First and second provisions not necessary to be considered). Third: That the policy, together with the application therefor, a copy of which application shall be indorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties. * * *"

This statute in plain language provides that the application which must be indorsed upon or attached to the policy and the policy shall constitute the entire contract between the parties. The manifest purpose of this statute was to protect the insured against his policy of insurance being practically annulled by attaching to it instruments of writing, such as riders, that in terms would destroy the primary contract as expressed in the policy. It was intended that the contract of insurance should be expressed in two simple instruments. First, the application, which must be indorsed or attached to the policy issued pursuant to the application; thereby the contract of the parties would for all practical purposes be expressed in one instrument. The purpose of the statute was to avoid just such a controversy as has arisen in this case. The defendant contends that if the language of the policy is not broad enough to preclude the beneficiary from recovering, there can be no doubt but that the language contained in the rider excludes a recovery.

It is plain that the rider attached to the policy is prohibited under the provisions of the statute, supra, and that the agreement contained in the application to attach the rider is in violation of the statute. The courts uniformly hold that where a contract violates the positive legislation of the state it will not be enforced. 13 C. J. 255; Coffe & Carkener v. Wilhite, 56 Okla. 394, 156 Pac. 169; Klein et al. v. Keller, 42 Okla. 592, 141 Pac. 1117; Ann. Cas 1916D, 1070. The fact that the Insurance Commissioner approved the form of policy with the rider attached does not in any way sustain the contention of counsel for the defendant. The Insurance Commissioner has no power or authority to approve a form of policy that violates a statute or constitutional provision. Mutual Benefit Life Ins. Co., of Newark, N. J., v. Welch, Ins. Com'r, 71 Oklahoma, 175 Pac. 45. In view of this conclusion the right of the plaintiff to recover depends upon the proper construction of the provision found in the policy on page 2 heretofore referred to. Under this provision the insurance company claims exemption from liability if at any time the insured shall engage in military or naval services in time of war without the written consent of the company and the payment of an extra premium. It appears that a number of cases support this contention and have construed similar provisions as exempting the company from liability if the insured is inducted into military service or assumed the status of a soldier. Bradshaw v. Farmers' & Bankers' Life Insurance Co., 107 Kan. 681, 193 Pac. 332, 11 Am. L. Reps. 1091; Miller v. Illinois Bankers' Life Association (Ark.) 212 S. W. 310, 7 Am. L. Reps. 378; Huntington v. Fraternal Reserve Association (Wis.) 181 N. W. 819; Olson v. Grand Lodge A. O. U. W. (N. D.) 194 N. W. 7; Ruddock v. Insurance Company (Mich.) 177 N. W. 242; Field v. Indemnity Company (Tex. Civ. App.) 227 S. W. 530; McQueen v. Woodman (S. C.) 106 S. E. 32; Reid v. American National Assusance Co. (Mo. App.) 218 S. W. 957; Mattox v. New England Life Insurance Co. (Ga.) 103 S. E. 180; Slaughter v. Protective League Life Insurance Co. (Mo. App.) 223 S. W. 819; Sandstedt v. American Central Life Insurance Co. (Wash.) 186 Pac. 1069.

But under the admitted facts in this case we prefer to follow the other rule supported by well-reasoned cases hereafter mentioned. There can be no serious contention but that the intention of the parties to the contract of insurance by inserting a military clause was to restrict and limit the liability of the company in the event of increased hazard to the insured by engaging in military service. Now, if such service did not increase the hazard, the clause has served its purpose. It was the primary intention of the parties to the contract to insure the life of the insured against the ordinary hazards incident to life of the insured, and under the admitted facts in this case the insurance company is not required, if held liable, to do more than it agreed to do under the primary provisions of the policy.

The premium was paid by the insured in consideration of the agreement upon the part **of** the insurance company that his life was insured against all ordinary hazards incident to life of the insured. Therefore, the exemption which the insurance company is entitled to invoke must be strictly construed, and where it does not clearly appear that the insured by engaging in the forbidden occupation has in some way increased the hazard insured against by the primary obligation, the company will be held liable unless the language of the contract is so clear as to permit of no other construction than the one contended for by the company. The reason for the rule is that a special provision of a contract will not be given an inconsistent construction with the general provisions of the contract, but will be construed so as to harmonize with the general scope and purpose of the contract if possible. Where clauses in a contract are repugnant, the one which expresses the chief object and purpose of the contract must prevail. 6 R. C. L. p. 847.

The phrase, "engaged in military service in time of war," in order to have a consistent and harmonious construction in connection with the general terms and scope of the insurance contract, must denote such service as would increase the hazard or risk of the insurer. Where the insured died many miles away from actual military engagements with an ordinary disease common alike to civil and military life, there is no just reason to permit the insurer to escape liability such as was assumed by it under its primary obligation as shown by the stipulation herein.

It is, therefore, our opinion that the logical conclusion is the phrase, "engaged in military service," denotes such action as increased the hazard. If the company meant to exempt itself from liability where the insured was merely inducted into military service, more apt language could have readily been used.

It is a fundamental canon of the law in the construction of contracts, in arriving at the intention of the parties, that the contract must be construed as a whole. 13 C. J. 525; Withington v. Gypsy Oil Co., 68 Oklahoma, 172 Pac. 634; Kansas City Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 Pac. 639; 6 R. C. L., sec. 227.

It is the tendency of the courts in the construction of contracts, the meaning of which is doubtful from the language used, to adopt the construction which makes the contract fair and equitable to the parties with respect to their obligations. Withing-

ton v. Gypsy Oil Co., supra; Genet v. Delaware & Hudson Canal Co., 163 N. Y. 173, 19 L. R. A. 127; Elliott on Contracts, sec. 1521.

Applying these rules of construction to the contract in question, it is clear that it was not the intention of the parties to exempt the insurer from its primary obligation unless the insured did something which increased the hazard assumed by the insurer under its original contractual obligation. The admitted facts are, in substance, that the death of the insured was caused by an ordinary disease common to all citizens at that time, and his death was in no way contributed to by reason of the fact that he had been inducted into military service. Therefore, under these admitted facts, it would be inequitable through a technical construction of the contract to relieve the defendant of liability.

In the case of Benham v. American Central Life Insurance Company, 217 S. W. 462, the Supreme Court of Arkansas, in considering a provision in a life insurance policy almost identical with the one under consideration, held:

"The words in the restricted clause now under consideration mean something more than death to the insured during the period of time he was in military service of the United States. The word 'engaged' denotes action. It means to take part in. To illustrate, a servant injured while in the operation of a train means that he must be injured while assisting or taking part in the operation of the train. An officer engaged in the discharge of the duties of his office is one performing the duties of his office. So here the words, 'death while engaged in military service in time of war,' mean death while doing, performing, or taking part in some military service in time of war; in other words, it must be death caused by performing some duty in the military service. That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service. This construction, we think, would be according to the natural and ordinary meaning of the words. By the use of the word 'engaged' it must have been intended that some activity in the service should have caused the death, in contradistinction to merely a period of time while the insured was in the service."

Other authorities supporting the conclusion herein reached are: Nutt v. Security Life Insurance Company (Ark.) 218 S. W. 675; Atkinson v. Indiana Nat. Life Insurance Company (Ind. App.) 132 N. E. 263;

Redd v. American Central Life Insurance Company, 200 Mo. App. 383; Long v. St. Joseph Life Insurance Company (Mo. App.) 225 S. W. 106; Caroline C. Mattes, Appellee, v. Merchants' Reserve Life Insurance Company (Ill.) Chicago Court of Appeals, decided June 13, 1921.

It is a well-established rule of law that in the construction of insurance policies which appear to be ambiguous, the construction will be adopted which is most favorable to the insured. Maxwell v. Springfield, etc., Company (Ind. App.) 125 N. E. 646; Renn v. Supreme Lodge, 83 Mo. App. 1; Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S. W. 151 Ann. Cas. 1912D, 483; Sovereign Camp W. O. W. v. O'Neil, 86 Okla. 16, 205 Pac. 755; Richards v. Standard Accident Ins. Co. (Utah) 200 Pac. 1017, 17 A. L. R. 1183.

Our conclusion is that the exemption provided for in the military clause under consideration must be one which increased the risk assumed by the company under its primary obligation, to relieve the company of liability. It being stipulated that the evidence did not disclose that by the insured being inducted into military service the hazard assumed by the company was increased, the judgment of the trial court should have been for the plaintiff.

The cause is, therefore, reversed, with directions to enter judgment in favor of the plaintiff.

HARRISON, C. J., and KANE, JOHNSON, McNEILL, and MILLER, JJ., concur.