W. H. FRITZMEIER v. TEXAS EMPLOYERS' INSURANCE
ASSOCIATION.

No. 7006.   Decided March 16, 1938.
(114 S. W., 2d Series, 236.)

*Caldwell, Gillen, Francis & Gallagher*, of Dallas, for plaintiff in error.

The evidence showing that due to the location of the work, transportation of the employees to and from their work was reasonably necessary and incident to the conduct of such work, an injury sustained by an employee in a collision on the highway as he was being carried to work on the company's truck in accordance with the regular routine of the employer, was

within the course of his employment under the terms and provisions of the Workmen's Compensation Statute, independently of whether there was a contractual obligation on the part of the employer to so transport the employees. Lumbermen's Reciprocal Assn. v. Behnken, 112 Texas 103, 112, 246 S. W. 72; Watts v. Continental Casualty Co., 18 S. W. (2d) 591; Traders & Gen. Ins. Co. v. Nunley, 80 S. W. (2d) 383.

*Ramey, Calhoun & Marsh,* and *John W. Sheehy,* all of Tyler, for defendant in error.

It was not employer's duty to see how plaintiff got to and from his work. He received the same wages as employees who did not ride the truck, and defendant was not liable for his injury. Smith v. Texas Emp. Ins. Assn., 105 S. W. (2d) 192; Texas Ind. Ins. Co. v. Clark, 81 S. W. (2d) 67; Banks v. Commercial Stand. Ins. Co., 78 S. W. (2d) 660.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Suit was by W. H. Fritzmeier against Texas Employers' Insurance Association to set aside an award of the Industrial Accident Board. Judgment was for plaintiff and was reversed and rendered by the Court of Civil Appeals. 85 S. W. (2d) 1079.

The jury found that Fritzmeier's injuries were sustained in the course of his employment. The court instructed the jury in connection with the issue submitting the injury that the term "injuries sustained in the course of his employment" meant, in the language of the statute, "injuries of every kind and character having to do with and originating in the work, business, trade and profession of an employer received by an employee while engaged in or about the furtherance of the affairs or business of the employer, whether on the premises of said employer or elsewhere." The ground upon which the judgment was rendered is there was no evidence the injury was received in the course of employment.

Fritzmeier was employed as a tank builder for the F. H. E. Oil Company, Inc., on what was known as the Seven-Pines job several miles distant from Gladewater. He did not live on the lease where the work was being performed and no facilities were there to make it possible for the workmen to remain overnight on the lease. Fritzmeier resided at Gladewater in a trailer-house and rode from Gladewater to the lease each morning and back each evening with Sam Winston, a truck driver

in charge of the truck being used on the job. Fritzmeier and the other employees who lived at Gladewater were instructed by one of the foremen on the work to meet at a designated place at Gladewater at a stated time in order to ride the truck and reach the work on time. On the morning Fritzmeier was injured he, together with the other employees that were waiting in compliance with the request of the foreman, left Gladewater between 6 and 7 o'clock on the day of the injury. While en route the injury was sustained.

The foregoing is a free paraphrase of some of the facts stated by the Court of Civil Appeals to be undisputed. The record contains other evidence which, considered in the light most favorable to the injured employee, discloses the supplemental facts that follow. The truck in which Fritzmeier was riding at the time of his injury was under the control of the employer. At the time of plaintiff's injury it was being operated by an employee of the company according to its instructions. The Seven-Pines job was located about 15 miles from Gladewater several miles off the highway. There were two gangs working on the job, the "bull gang" and the "riveters." In erecting the tank the "bull gang," of which Fritzmeier was a member, would get the steel in position. This had to be done before the riveters could proceed with their work. If any member of the "bull gang" was late or did not show up the work had to stop, which delayed its progress. One of the foremen stated upon the trial it was "of special concern" that the "bull gang" be on time for the work, and that it was not easy to get a crew for the reason the "facilities were too far away"; that "a workman could not do a day's work and walk the distance out there and the distance back in a day"; that "the boys living in Gladewater and vicinity traveled back and forth from Gladewater to the Seven-Pines job on a company truck," and that Fritzmeier rode the truck with the other boys; that the men worked from 9 to 14 hours a day; that prior to the time of beginning work on the Seven-Pines job the employer was working on what was known as the Cherokee job; that Fritzmeier came to him about the time they were winding up the Cherokee job "to know about transportation from Gladewater to the Seven-Pines job," and that he told him and the other employees "to ride the truck"; that they "were told to meet in a body and have one meeting place so they would not have to be stopping all along the road and picking them up at different places"; that the meeting place was "in front of Slim's Cafe" in Gladewater. In the process of finishing the Cherokee job and moving to the Seven-Pines job it was necessary to

haul materials from the former to the latter. One of the foremen told the men on the Seven-Pines job the day before the accident to be at Slim's Cafe on time the next morning so that they could stop by the Cherokee job to pick up some bolts and rivets. In compliance with the instruction Fritzmeier and the other employees customarily riding the truck went by the Cherokee job, picked up several kegs of rivets and other materials and were proceeding from there over the regular route to the Seven-Pines lease when the truck was sideswiped by another going in an opposite direction, causing plaintiff's injury. Fritzmeier by the company's prearrangement rode the truck every day from the time he began work on the Seven-Pines job until he was injured, as did the other employees in his gang, except one who sometimes went in his own car. He was picked up each time at the place designated by the foreman and in accordance with the plan mentioned.

Article 8309 of the Revised Statutes (1925), omitting the provisions not material here, reads:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

"1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employee's wilful intention and attempt to injure himself, or to unlawfully injure some other person but shall include *all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer* received by an employee while engaged *in or about* the furtherance of the affairs or business of his employer *whether upon the employer's premises or elsewhere.*" (Italics ours.)

1 The principal question presented is whether the evidence raises an issue as to whether the injury sustained by Fritzmeier was within the terms of Section 4, supra, of the statute.

Jones v. Casualty Reciprocal Exchange, (writ refused) 250 S. W. 1073, is a case in which the employer permitted the employee in question and other employees to use its truck in going home to lunch. He was killed on a public road while returning

from lunch by a collision of the truck in which he was riding with an automobile. The trial court found it was optional with the employee whether he went home for his lunch. At no time was he instructed to do so. He made use of the truck of the employer for his own accommodation, but was thereby enabled to return to the plant in time to begin work at one o'clock. The arrangement as in the present case was beneficial to both employer and employee and was directly connected with the employment. The Court of Civil Appeals says:

"Such transportation was, as found by the court, provided by the employer for the 'accommodation' or convenience of the employees, and it was in no way obligatory upon any employee to go or return in the auto truck. While the employees were not required to use the auto truck still the inference from the facts is that it was *only by virtue of working as employees* that they were in fact permitted to use the truck as a means of conveyance to and from their work. *Evidently the ice company was not carrying the employees without regard to the relation between them created in their contract, but was doing so because of that relation and on account of their contract. It could be fairly said in the evidence that it was arranged between the ice company and the deceased that the latter would thus go and come with his fellow workmen, thereby expediting the work with greater convenience for all concerned.* The deceased was doing something for his employer when and by riding in the conveyance provided by the employer for the more convenient carrying forward of its service, even at the same time the employee was participating in a privilege which he could have foregone without neglect to his service. *The transportation was connected with the employment.*" (Italics ours.) In other words the causal relationship between the injury and the work was present. Texas Employers' Ins. Assn. v. Andrews et al., (Com. App.) 110 S. W. (2d) 49.

This Court refused writ of error in the case quoted from. Its correctness does not appear to have been questioned and has been many times approved. St. Louis Southwestern Ry. Co. of Texas v. Moore, (writ refused) 269 S. W. 191; Employers' Liability Assur. Corp. v. Light, (writ refused) 275 S. W. 685; McGuire & Cavender v. Edwards, (writ refused) 48 S. W. (2d) 1010; Legg v. Blythe et al., (writ refused) 80 S. W. (2d) 382. See also Petroleum Casualty Co. v. Green, (writ refused) 11 S. W. (2d) 388. The Legg case cites as authority for its construction of the section of the statute here under consideration the well considered case of Federal Surety Co. v. Ragle, (Com.

App.) 40 S. W. (2d). 63. The sole question there to be determined was whether the injuries received by the employee originated in and arose out of his employment and were in furtherance of the business of such employment. It is pointed out as a controlling fact that "while appellee's employer had not assumed the obligation of transporting appellee and his colaborers to and from Bryson to the work, *yet it knew of the arrangement followed, and plainly recognized the necessity of the method of transportation.*" (Italics ours.) The conclusion was reached that the injuries did so originate and that when received the employee was engaged in furtherance of the employer's business. Justice SHARP, then Commissioner, in the course of the opinion, directs attention to the purpose of the compensation law and to the fact that it "has become a part of the industrial and economic structure created by modern conditions and development," and states in conclusion that "Our Supreme Court has announced the sound and humane rule that the Workmen's Compensation Act is 'a remedial statute which should be liberally construed with a view to accomplish its purpose and to promote justice.' "

The association cites, among other cases in support of its holding, Smith et al. v. Texas Employers' Ins. Assn., 129 Texas 573, 105 S. W. (2d) 192; Texas Indemnity Ins. Co. v. Clark, 125 Texas 96, 81 S. W. (2d) 67, and Ætna Life Ins. Co. v. Burnett, (Com. App.) 283 S. W. 783. The cases cited are readily distinguishable on the facts from the present case. In the Clark case the employee was riding in a private car in quest of a boarding-house. The injured employee had not even reported for work on the morning of the accident and had no purpose of doing any work that day. The opinion states that "what he was doing had no relation whatever to that [the employer's] work," and that this fact was determinative of the case. In the Smith case, supra, in which the Clark case is cited, it is pointed out that the employee "on the occasion of the fatal injuries * * * was returning from his home [to his office] in his personally owned and operated automobile," which his employer had no right in or control over. The Court says: "It is shown affirmatively, however, that he was not called to the office in connection with the performance of any particular duty of his employment, and it was further shown that there was no special occasion which required his presence at the office at that time." In the Burnett case Judge BISHOP points out that the injury caused by the employee's attempt to move the gun from his car had nothing to do with the employer's business of selling baking powder, and says "this injury * * * did not originate in his

employer's business." In London Guarantee & Accident Co. v. Thetford, (Com. App.) 292 S. W. 857, a driver of one of the employer's trucks who was going to Wichita Falls upon request of another employee who lived there granted him the privilege of riding home. There was no prearrangement by the employer and the ride home was purely an accommodation on the part of such other employee extended upon an isolated occasion. An employee who was in charge of a truck merely permitted a fellow employee to "thumb" a ride home. It was not in furtherance of the business of the employer, which is an essential element of an injury within the purview of the statute.

The evidence in the present case warrants the inference that Fritzmeier was injured while being transported to his work in a truck under the control of his employer in accordance with an arrangement made by his employer for a purpose directly connected with the employment, and sustains the jury's finding that the injury was sustained in the course of employment within the meaning of Section 4 (Art. 8309) of the statute. The Court of Civil Appeals erred in holding the trial court should have given a peremptory instruction in favor of the association.

2   It is not necessary to discuss the propositions presented in the brief of the association filed in the Court of Civil Appeals questioning the manner of submitting the issue inquiring whether Fritzmeier's injuries were sustained in the course of his employment. The applicable part of the statutory definition given by the trial court in connection with the issue is clear. The term "originating in the work, business, trade or profession of an employer" used in the charge, is not a legal term requiring definition, and would not be simplified by an attempt to define it. A divided submission of the ultimate issue would not have clarified the matter for the jury, and would have required it to pass upon a number of purely evidentiary issues. The method of submission employed by the trial court is preferable. It enabled counsel to fairly and logically present the question in argument, and was in no wise calculated to confuse or mislead the jury.

3   The assignments complaining that a part of the argument of plaintiff's counsel was inflammatory have been considered. They do not present reversible error, if error at all. The only argument deemed improper relates to an inference that was perhaps deducible from remarks of counsel to the effect that one of the foremen of the employer who was a witness was discharged because of his attitude in the present case. The court

properly instructed the jury to disregard the argument and pointed out there was no evidence warranting such inference. In addition, the offending counsel, after such instruction was given, stated to the jury he had no intention of having it draw such inference from his statement. Reversible error on the part of the trial court is not shown by any of the assignments.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court March 16, 1938.