**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Jesse G. BOHLS et al., Appellees.**

No. 10490.

Court of Civil Appeals of Texas.

Austin.

June 5, 1957.

Rehearing Denied July 3, 1957.

Second Motion for Rehearing Overruled Aug. 7, 1957.

 

Coleman Gay, James R. Meyers, Austin, for appellant.

F. L. Kuykendall, Cofer & Cofer, Austin, for appellees.

ARCHER, Chief Justice.

This is a suit for a declaratory judgment to determine the extent of the coverage provided by an automobile liability insurance policy issued by the appellant to the appellee Jesse G. Bohls. Appellant sought a declaration that it was not obligated under the terms of that policy to defend any damage suit that might be brought by certain farm laborers arising out of an accident, occurring on August 10, 1955, or to pay any judgment that might be recovered by virtue of such suit against the appellees Jesse G. Bohls or his wife, Erna Bohls. Trial was to the court sitting without a jury and judgment was rendered in favor of the defendants.

The appeal is founded on one assignment of error and is that:

"The Trial Court Erred in Holding that the Automobile Liability Insurance Policy Issued by Appellant to Appellee Jesse G. Bohls Provided Coverage with Respect to Claims of Farm Laborers Arising out of the Automobile Accident of August 10, 1955."

The facts in this case are undisputed, and consist of a stipulation and the testimony of Jesse Bohls.

The stipulations are that on August 8, 1951, the policy was issued, obligating the Insurance Company to pay within the limits of the policy all sums that the assured might become legally obligated to pay as damages, caused by accident and arising out of the ownership of a certain pickup truck. The policy was for a continuous term, renewed at six months intervals by payment out of the premiums by Jesse G. Bohls, and no new policy was ever issued, but a premium notice was given Bohls,

showing the date the premium was paid and that the policy remained in force. The policy was a Texas Standard policy. The policy was in full force and effect at all times material to this cause.

"That on the date it was issued the policy contained a series of paragraphs which were captioned 'Exclusions' and provided in part the following:

" 'Exclusions:

" 'This policy does not apply:

" '(a) Under any of the coverages, while the automobile is used as a public or livery conveyance, unless such use is specifically declared and described in the policy and premium charged therefor;

" '*   *   *   *   *   *'

" '(d) Under coverages A and C, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law.'

"IV.

"Subsequent to the issuance of the policy described in paragraph I of this stipulation and prior to the renewal of said policy by the defendant, Jesse G. Bohls, by payment of the semi-annual premium due on August 4, 1955, the Board of Insurance Commissioners of the State of Texas entered an order providing that after April 1, 1955 no company should issue an automobile insurance policy unless the wording of paragraph (d) under the heading of 'Exclusions' in said standard policy form would read as follows:

" '(d) Under coverage A, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured.'

"The material part of said order is as follows:

" 'No insurance company issuing these policy forms for writing automobile insurance in the State of Texas shall issue, for motor vehicle insurance coverage in the State of Texas, any contract of insurance or any policy form except as herein provided to be effective on and after 12:01 A.M., April 1, 1955. Companies may continue to issue their current supply of present policies (December 1, 1947 edition) provided a letter of interpretation is filed with the Casualty Insurance Commissioner stating that the policy made obsolete by these revisions will be interpreted so as to afford any broader coverage granted by the revised forms as to the same coverages. In like manner, companies may also interpret outstanding policies written prior to April 1, 1955, so as to afford any broader coverage granted by the revised forms. The use of these policy forms is mandatory on and after 12:01 A.M., August 1, 1955.'

"Plaintiff Southern Farm Bureau Casualty Insurance Company had, prior to the renewal on August 4, 1955 of the policy of Jesse G. Bohls described by paragraph I, changed its printed Texas standard automobile insurance policy forms in accordance with the change prescribed by the Board of Insurance Commissioners in the wording of Section (d) of 'Exclusions', whereby the wording of said section was changed from that quoted by paragraph III above to that quoted in this paragraph IV. No change was made on the face or on the pages of policy No. 515095 held by Jesse G. Bohls, and no

new policy was ever issued by the plaintiff to Jesse G. Bohls at any time material to this suit, and no rider or other instrument in writing containing any change of wording was ever issued by plaintiff to Jesse G. Bohls at any time material to this suit.

"The defendant Jesse G. Bohls did not know that the Texas Board of Insurance Commissioners had changed the wording of the Texas standard automobile insurance policy form, and the defendant Jesse G. Bohls was never notified by the plaintiff, nor did he ever receive any notice of any kind or character at any time material to this cause that the plaintiff contended that the Board of Insurance Commissioners had changed in any respect the wording of said defendant's contract of insurance with plaintiff."

The accident occurred on August 10, 1955, while Mrs. Erna Bohls, wife of Jesse G. Bohls, was driving the pick-up from the Bohls farm to Pflugerville, after the day's work had been done and Dorothy Isaac and Roxie Burr were being transported to Pflugerville, the truck partially overturned and Dorothy Isaac and Roxie Burr were injured.

Jesse G. Bohls testified that he was engaged in farming and that he had brought a load of pickers from Pflugerville to his farm, having made a trade with them to pull cotton on a basis of $1.25 per hundred pounds and agreed to furnish a ride from Pflugerville to his farm, morning and evening, to those pickers who would make such rides; the only instructions he gave the pickers was to begin on one side of the field and pick through and to pick the rows clean; that he did not tell the pickers what, or how many hours to work, or exercised any control as to rest periods; that the pickers quit when they wanted to, but they quit generally about sundown; that he never had fired any pickers, but could have if the work was not satisfactory.

As is set out above the prime question is the effectiveness and the applicableness of the exclusions in the policy, and particularly coverage (d):

"Under coverages A (Bodily Injury Liability) and C (Medical Payments), to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law."

■ It is not seriously contended that the order of the Board of Insurance Commissioners directing that, in the future in all policies issued, that the exclusion as to employees engaged in the employment of the insured should be revised so as to exclude injury to any employee arising out of and in the course of employment by the insured, is applicable to appellees, Dorothy Isaac or Roxie Burr.

No rider or notice of any change in the policy was ever given Mr. Bohls. The policy was continuous, and the premiums paid. Under these circumstances it was binding on appellant. See Moreland v. Knox, Tex.Civ.App. Austin 268 S.W.2d 744, writ ref. N.R.E.

We find no Texas cases in point on the question of whether the farm laborers were "engaged in the employment" when injured.

In Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co., 10 Cir., 147 F.2d 536, 537, the policy excluded " * * * any employee of the insured while engaged in the business * * * of the insured * * *." The Court there said:

"At the time of the accident Little was not engaged in any work and was not performing any service for Passmore and he was not receiving any pay for his time. He was simply rid-

ing from the place of work to Passmore's shop in a conveyance gratuitously furnished by Passmore. * * *

"Moreover, the exclusion clause 'engaged in the business, * * * of the insured' differs materially from the clause 'arising out of and in the course of his employment.' The word 'engaged' connotes action. In Barnett v. Merchants' Life Ins. Co., supra [87 Okl. 42, 208 P. 271, 272], the court, in construing a clause in the policy 'shall engage in military or naval service in time of war,' held that the word 'engage' denotes action and that it means to take part in by performing some duty.

"In Head v. New York Life Ins. Co., 10 Cir., 43 F.2d 517, 520, this court said: 'Engage,' is defined in Words and Phrases, at [14 A. page 188], as follows: ' "Engage" means to take part in or be employed in, however the employment may arise;' and at page [196] as follows: 'To "engage" is to embark in a business; to take a part; to employ or involve one's self; to devote attention and effort.'

"No doubt, under certain particular factual situations there would be no doubt that the employee either was or was not engaged in the business of his employer. But, in a borderline case, such as is here presented, we think the rule of strict construction of the exclusion clause has legitimate application. Clearly, the exclusion clause here involved is not less ambiguous than the clause 'engages in military or naval service' or the clause 'arising out of and in the course of his employment.' To the former the Supreme Court of Oklahoma has applied the rule of strict construction and to the latter the rule of liberal construction. Hence, we are constrained to hold, in the light of the Oklahoma decisions, that Little at the time of the accident was not

'engaged in the business' of Passmore."

Other cases are cited by the court in support of its decision.

We see no valid distinction between being "engaged in the business of the insured" and being "engaged in employment" of the insured.

It is obvious here that the farm workers were not performing any service for their employer when injured. In fact, he was performing a service for them by furnishing their transportation.

■ We conclude that since the farm laborers were not engaged in their employment, that appellant is liable under its policy and bound to defend the suit.

The judgment of the Trial Court is affirmed.

Affirmed.

On Appellant's Motion for Rehearing

HUGHES, Justice.

We assumed for the purpose of deciding this case that the farm laborers employed by Mr. Bohls to pull cotton were his employees. It was not necessary for us to decide whether such laborers were employees or independent contractors, as contended by appellees, because we were clearly of the opinion that they were not "engaged in the employment" when injured. In support of this conclusion we cited the Passmore case.

Cited to the contrary by appellant are Lumber Mutual Casualty Ins. Co. of New York v. Stukes, 4 Cir., 164 F.2d 571, and Campbell v. American Farmers Mutual Insurance Co., 8 Cir., 238 F.2d 284.

We have carefully examined these cases as well as some of the authorities they cite and there are many distinguishing features in them, such as differently worded exclusion clauses, other provisions of the

policies, questions of fact etc., but primarily these cases turn upon the local law of the States in which the suits originated and this local law seems to stem not from insurance cases but from cases arising under either Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., or State Workmen's Compensation Statutes, Vernon's Ann.Civ. St., art. 8306 et seq.; [1] A complete and thorough analysis of all these authorities and statutes would not be rewarding because we are convinced that no Texas decision requires the construction of this exclusion clause to coincide with the construction of our Workmen's Compensation Statute. There are at least two sufficient reasons for not construing the statute and exclusion clause the same (1) the rules for construing the one are not applicable to the other (2) their wording is different.

The rules for construing insurance policies are stated thusly:

"It is a settled principle of insurance law, laid down in many decisions, that language of a policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured." 24-B Tex.Jur. p. 104.

"As in the case of provisions for forfeiture, exceptions and words of limitation in the nature of an exception are strictly construed against the insurer, especially if of uncertain import or reasonably susceptible to a double construction." 24-B Tex.Jur. p. 102.

In Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, 381, the Court reiterated these rules in this language:

"It is a settled rule in this state that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer. United Service Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048; Wood v. Southern Casualty Co., Tex. Civ.App., 270 S.W. 1055 (writ dism.); 24 Tex.Jur. p. 705, sec. 29. It is also well settled that exceptions and words of limitation will be strictly construed against the insurer. American Fidelity & Casualty Co., Inc., v. Williams, Tex. Civ.App., 34 S.W.2d 396, 402 (writ dism.); Norwood v. Washington Fidelity Nat. Ins. Co., Tex.Civ.App., 16 S.W.2d 842 (no writ history); 24 Tex. Jur. p. 704, sec. 28. We will certainly not write a limitation of liability into a policy where none exists."

The rule for construing our Workmen's Compensation Statutes is stated in Federal Surety Co. v. Ragle, Tex.Com.App., 40 S.W. 2d 63, 66, as follows:

"The courts, as a general rule, have given the compensation statutes a liberal construction. The purpose of the law was to do away with the issues of negligence, accident, assumed risk, contributory negligence, and other like issues, and to further provide that the amount recoverable be free of any

1. In Gctlin v. Maryland Casualty Co., 9 Cir., 196 F.2d 249, 251, 50 A.L.R.2d 73, a case involving the interpretation of an exclusion clause in a liability insurance policy, the Court said:
"It is not surprising that this kind of a question should have provoked litigation by claimants against insurance companies. Wording of many of these policies differs slightly and the facts of the various cases differ even more importantly. We should set aside at once the various cases involving workmen's compensation acts in which courts have found that injuries to employees going to or returning from work arose out of and in the course of the employment. These cases involve the entirely justifiable effort on the part of the courts to bring cases under the coverage of the compensation act. They are not in point here. See for collection of decisions on this point [Stansberry v. Monitor Stove Co., 150 Minn. 1, 183 N.W. 977] 20 A.L.R. [316] 319; [Pattiani v. Industrial Acc. Comm., 199 Cal. 596, 250 P. 864] 49 A.L.R. [446] 454; 63 A.L.R. 469; [Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441] 100 A.L.R. [1044] 1053."

uncertainty. Both employer and employee were dissatisfied with the old system of litigation, which was expensive. The compensation for injuries to an employee is no longer founded upon the fault or negligence of the employee, but is awarded upon broader and more humane rules. This rule has become a part of the industrial and economic structure created by modern conditions and development. This class of legislation rests upon the broad rule that the injured workman is entitled to compensation for an injury sustained in the service of an industry, regardless of the question of negligence or fault on his part. Our Supreme Court has announced the sound and humane rule that the Workmen's Compensation Act is 'a remedial statute which should be liberally construed with a view to accomplish its purpose and to promote justice.'"

The language of the exclusion clause of the policy, pertinent here, is "any employee of the insured while engaged in the employment."

How different are the provisions of our Workmen's Compensation Statute. Art. 8309, V.A.C.S., provides that "The term 'injury sustained in the course of employment,' as used in this Act, shall not include" certain named injuries but "shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

These two observations seem obvious. (1) The farm laborers in this case were clearly within the course of their employment within the meaning of our Workmen's Compensation laws when injured.[2] (2) It does not necessarily follow that they were "engaged in the employment" within the exclusion clause when injured.

In addition to Passmore quoted from in our original opinion we desire to cite and quote from Eliott v. Behner, 150 Kan. 876, 96 P.2d 852, 854. In that case the policy excluded bodily injury "to any employee of the assured, except household servants other than chauffeurs, while engaged in any business or occupation of the assured." The Court said:

"* * * It will be noted that in order for this exemption to apply Elliott must not only have been an employee of the assured, but he must also have been killed while he was engaged in the business or occupation of the assured."

The Court further said:

"It is clear that every one who is engaged in the business or occupation of the assured would be its employee but not every employee is engaged in the business or occupation of the assured all the time. * * * In this case Elliott had finished eight hours work for the county. The trip home in the truck was no part of his employment. He paid nothing for it and could ride in the truck or not as he saw fit. He was performing no service for the county when thus riding. * * * In the second place, the transportation could be an 'implied condition of the contract of employment,' and still Elliott would not be engaged in the 'business or occupation' of the county when he was killed."

The holding was that Elliott, killed while riding home, was not within the exclusion clause.

To the same effect is Francis v. Scheper, 326 Mich. 441, 40 N.W.2d 214, 216.[3] This case is directly in point. There the transportation to and from home in the em-

---

2. Fritzmeier v. Texas Employers' Ins. Ass'n, 131 Tex. 165, 114 S.W.2d 236.

3. In speaking of these cases and those cited by appellant the Court in Getlin v.

ployer's car was part of the consideration for the employee's services as a painter. The employee was injured on the way home. The insurance policy excluded employees "engaged in the employment." The Court in holding the insurer liable said: "The phrase, 'engaged in the employment,' can fairly be construed as meaning, active in the work plaintiff was employed and paid to do."

Appellant asserts that our decision here is in conflict with City of Wichita Falls v. Travelers Ins. Co., Tex.Civ.App. Fort Worth 137 S.W.2d 170, writ dism. cor. judgm.

In this case an employee of the City was injured while being transported in a city truck after working hours to the city barn. Employees gathered there for work assignments in the morning and were delivered there after the day's work was done. The employees' job was cutting weeds.

The language of the exclusion clause of the policy involved was that the coverage did not apply to "an employee of the assured while engaged in the business of the assured." According to the opinion of the Court the city "argued that Phillips' (employee) work for the day was over at the time of his injury, and that he was a mile or more from the place where he had worked when injured, and therefore he was not, at the time of the injury, in the *employ* of the city." (Italics ours.) In overruling this contention the Court said:

"We think the record before us shows that in connection with the work the city was giving Phillips, that it undertook to give him free transportation from the city barns to the place of work and return. The city had not fully discharged that obligation until the truck had arrived at the barns."

The only cases cited to support this statement were Workmen's Compensation cases which, as above indicated, we do not believe to be controlling in the interpretation of the exclusion clause in an insurance policy.

We have no doubt but that the employee in City of Wichita Falls was injured in the course of his employment under our Workmen's Compensation Statutes. The Court there apparently assumed, as it did not discuss the question, that inclusion under such statutes would necessarily mean exclusion under the insurance policy. For the reasons above stated we do not agree that this is correct.

The Supreme Court approved the judgment in City of Wichita Falls. Upon what ground we do not know and have no way of knowing; hence we cannot know whether our decision is in conflict. Certainly we do not conflict with anything said by the Court of Civil Appeals in its opinion. Under these circumstances we do not believe we are required to follow the decision in that case. We remain convinced that our original opinion is correct.

The motion is overruled.

Motion overruled.

Maryland Casualty Co., 9 Cir., 196 F.2d 249, 251, 50 A.L.R.2d 73, said:
"Another class of cases which counsel have labored heavily in this case are situations in which employees, at the termination of a day's work, are given gratuitous transportation by their employer back to the place from which they started their working day. In these sit- uations the transportation is not part of the job; it may be accepted or not by the employee and it is not surprising to find holdings that during such transportation the employee is not engaged in his occupation. Even here, however, the authorities do not speak with one accord."