Tony Ray CHAMBERS, Appellant,

v.

Henry Winfield WALKER and MFA Insurance Company, Appellees.

No. 55336.

Supreme Court of Oklahoma.

Nov. 2, 1982.

---

James H. Werner and Scott W. Draughon, Tulsa, for appellant.

Best, Sharp, Thomas, Glass & Atkinson by Joseph A. Sharp, Jack M. Thomas, and Robin M. Aiken, Tulsa, for appellees.

WILSON, Justice.

This appeal presents only one issue: whether an uninsured motorist coverage provision allowing a reduction or set-off of amounts paid or payable under any workmen's compensation law is void as being in derogation of the legislative purpose contained in the Uninsured Motorist Statute.

The undisputed facts are that a traffic accident occurred involving Tony Ray Chambers [hereinafter referred to as appellant] and the defendant, Henry Winfield Walker. As a result of the collision, appellant suffered a broken neck rendering him totally disabled and without use of his arms or legs. Mr. Chambers was eighteen (18) years old at the time. When the accident occurred, appellant was on a business errand for his father, by whom he was employed. Mr. Chambers has already made a

recovery against his father's workmen's compensation carrier in an amount equal to or greater than $10,000.00.

The automobile, owned by appellant's grandfather, was covered by a policy of insurance issued by the MFA Insurance Company [hereinafter referred to as appellee, or MFA] providing for uninsured motorist protection in the amount of $10,000.00 for a single person in a single accident. This protection extended to a permissive driver of the vehicle, in this case the appellant herein. The defendant, Henry Winfield Walker, was an uninsured motorist and both parties agree that Walker was at fault in this accident.

The appellant has brought suit herein for the total sum of $810,000.00 and the parties agree that whatever sum might be ultimately awarded in this case would exceed the workmen's compensation benefits and the $10,000.00 coverage sought herein.

MFA relies on its policy provision (Clause 4(b) 2—Limits of Liability) reducing the amount of its coverage under the uninsured motorist provision by any amount received by the appellant under the Oklahoma Workmen's Compensation Law.[1] Giving effect to said provision, the trial court granted summary judgment to the appellee. In support of the trial court's decision, MFA cites *Markham v. State Farm Mutual Automobile Insurance Co.*, 464 F.2d 703 (10th Cir.1972) wherein the rationale included the statement that the purpose of the Oklahoma Uninsured Motorist Statute[2] is to afford the insured the same protection when involved in an accident with an uninsured motorist as he would have enjoyed if the offending motorist had carried liability insurance. MFA contends that if the uninsured motorist in the instant case had carried a liability policy as required by the

Financial Responsibility Statute,[3] appellant would not have been allowed to keep both his recovery from said motorist and his workmen's compensation benefits. Therefore, MFA argues it should be allowed to deduct from its uninsured motorist coverage any amounts plaintiff would have lost through subrogation of the Workmen's Compensation carrier, since the net recovery to the plaintiff would be the same. Such a procedure is referred to as the "net recovery theory" and will be thus referred to herein. Courts in rejecting the net recovery theory have espoused various rationales. States requiring minimum uninsured motorist coverage have confronted policy provisions purporting to reduce liability by the amount of workmen's compensation and have held such provisions void as against public policy where they resulted in a lesser obligation for the insured than required by statute—*Southeast Title and Insurance Company v. Austin,* 202 So.2d 179 (Fla. 1967); *Peterson v. State Farm Automobile Insurance Company,* 238 Or. 106, 393 P.2d 651 (1964); *Preferred Risk Mutual Insurance Company v. Holmes,* 287 Ala. 251, 251 So.2d 213 (1971); *Williams v. Buckelew,* 246 So.2d 58 (La.App.1971); *Aldcroft v. Fidelity and Casualty Company,* 106 R.I. 311, 259 A.2d 408 (1969); *Booth v. Seaboard Fire and Marine Insurance Company,* 431 F.2d 212 (8th Cir.1970).

In rejecting the net-recovery theory, the Supreme Court of Nebraska in construing language similar to that relied on by appellee in *Markham,* supra, stated:

"The defendant urges that the district court's holding is justified by the language found in 'Stephens' (Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133) which reads: 'The insured is entitled to recover the

---

1. The uninsured motorist provision of the policy provides:
   "4. Limits of Liability—with respect to the Insurance afforded under Coverage E:
   (b) Any amount payable under the terms of this Coverage E because of bodily injury sustained in an accident by a person who is an uninsured under this Coverage E shall be reduced by:

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law, or any similar law."

2. 36 O.S. § 3636, Supp.1979.

3. 47 O.S.Supp.1980 § 7–204.

same amount he would have recovered if the offending motorist had maintained liability insurance.' This construction of the language of the *'Stephens'* case slights the intended meaning of the Nebraska Court. Workmen's compensation benefits are never setoff in favor of the tortfeasor. To apply *'Stephens'* in such a way fails to consider practical factors involved in workmen's compensation payments in relation to third party claims. *The subrogation right of the compensation carrier exists against the tortfeasor and not the assured.....*" (Emphasis supplied.) *Booth v. Seaboard Fire and Marine Insurance Company*, 431 F.2d 212, 219 (8th Cir.1970).

In its analysis of the net-recovery theory, the Supreme Court of Arkansas made clear that the legislative mandate to provide uninsured motorist coverage and the legislation providing subrogation rights for the workmen's compensation carrier could not be construed to provide a windfall for the insurer. The Court stated:

"We do not equate the right of a workmen's compensation carrier to subrogation against a tortfeasor's liability carrier with the asserted right of the insured's own indemnity carrier to reduce the amount of its coverage by the amount of benefits received from a collateral source, in spite of the fact that the insured had paid a premium for the full amount of prescribed limits. To do so would result in giving greater coverage to one who was not covered by workmen's compensation than one who was. The uninsured motorist legislation was passed long after adoption of the Workmen's Compensation Act. When we consider the basic purposes of the latter act, our belief that the legislature did not intend that the Uninsured Motorist Act be the means of discrimination against working people protected under the workmen's compensation laws is strengthened. Analogy of the subrogation right of the compensation carrier to the right of the indemnity carrier to reduce its liability is inappropriate. The subrogation right is for the protection of the compensation carrier.

The right claimed by NFU would simply provide it with a windfall in the case of one covered by the workmen's compensation laws. *The purpose of the Uninsured Motorist Act is to protect the insured, not the insurer."* (Emphasis supplied.) *The Travelers Insurance Co. v. National Farmer's Union Property and Casualty Co.*, 252 Ark. 624, 480 S.W.2d 585, 591 (1972).

We agree with the reasoning expressed in *Travelers* above. This Court has recognized in *Keel v. MFA Insurance Co.*, 553 P.2d 153 (Okl.1976) the unfairness of permitting an insurer to deny to an insured the benefit of a certain type of coverage for which the insured has paid premiums.

The terms of 36 O.S.1971, § 3636 state that no automobile liability insurance policy may be offered unless it includes uninsured motorist coverage in amounts not less than those prescribed by Section 7–204 of Title 47, Oklahoma Statutes. We regard policy provisions such as the one under examination herein as a subterfuge to get around minimum statutory requirements of coverage established by the Legislature. See *Bacchus v. Farmers Insurance Group Exchange*, 106 Ariz. 280, 475 P.2d 264 (1970); *Booth v. Seaboard Fire and Marine Insurance Company*, supra; *Nationwide Mutual Insurance Company v. Hillyer*, 32 Colo.App. 163, 509 P.2d 810 (1973). In *Porter v. MFA*, 643 P.2d 302, 304, we held a consent-to-sue clause void, recognizing that its effect could be to "chill settlements and otherwise *dilute the mandatory uninsured motorist statute."* (Emphasis supplied).

The Court's construction of 36 O.S.1971 § 6092 in *Aetna Cas. & Sur. Co. v. State Bd., etc.*, 637 P.2d 1251 is persuasive authority to deny insurer set-off of payments made to the claimant-defendant under the Workmen's Compensation Law. This Court said at page 1255:

"Subrogation rights are commonly allowed when the insured sustains a fixed financial loss.

. . . . In personal insurance contracts however, the exact loss is never totally

capable of ascertainment, and therefore the same reasons militating against double recovery do not obtain. The general rule, therefore, is that the insurer is not subrogated to the insured's right or the beneficiary's rights under contract of personal injury."

Our examination of the net recovery theory has included consideration of the following statute which reflects the latest legislative expression on this subject:

"... Provided further, that any payment made by the insured tort-feasor, shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage." 36 O.S.Supp.1979 § 3636(E).

Since the intention of the legislature is so clear that payments made by a tort-feasor should not diminish the injured party's recovery under his own policy, it is even more likely that the set-off of benefits recovered from a collateral source would be prohibited.[4]

In accord with the rationales above stated, we hold that the limitation provision (set out in Footnote 1) is void since if given effect it would reduce the amount of coverage available under the uninsured motorist provisions to less than the amount required by statute and hence is violative of the statute. For the same reasons we reject the appellee's subsidiary argument that it be allowed a partial set-off insofar as its coverage liability ($10,000) exceeds the 1977 statutory minimum required uninsured motorist coverage ($5,000).[5]

■ Appellee asserts as its final argument that the exclusionary provision being examined herein is valid because it was contained in a policy which had been approved by the State Board of Property and Casualty Rates. This argument can be briefly answered by reference to the case of *Barnett v. Merchant's Life Insurance Co.*, 87 Okl. 42, 208 P. 271 (1922). Therein, the defendant insurance company attempted to rely on the exclusionary provisions of a rider attached to the policy being sued on. Though the rider was clearly prohibited by statute, it had been approved by the insurance commissioner. The Court said:

"The fact that the insurance commissioner approved the form of policy with the rider attached does not in any way sustain the contention of counsel for the defendant. The insurance commissioner has no power or authority to approve a form of policy that violates a statute or constitutional provision. *Mutual Benefit Life Ins. Co. of Newark, N.J. v. Welch, Ins. Com'r.* [71 Okl. 59] 175 P. 45." (*Barnett*, supra, p. 273).

That the determination of the legality of a given provision approved by the Insurance Commissioner is necessarily preliminary is supported by the following quote from *Mutual Benefit Life Ins. Co. v. Welch*, 71 Okl. 59, 175 P. 45, 50 (1917):

"... Although in the first instance the Insurance Commissioner has the right and it is his duty to construe the law in determining the sphere within which he has a right to act, yet it is at last and ultimately the duty of the courts to say whether he has acted within the powers so conferred on him by the law."

Accordingly, we find appellant's last argument without merit.

■ The fact that the Oklahoma statutes require that Uninsured Motorist Coverage be offered to every person buying automobile liability insurance and that a written refusal is required to substantiate rejection of such coverage indicate a very clear legislative intent in favor of coverage. In light of the clear statutory language in favor of coverage and the reasoning expressed herein, we hold that policy provisions reducing the insurer's liability under the uninsured motorist coverage provisions of the policy by the amount paid the insured as workmen's compensation benefits are in deroga-

---

4. That Oklahoma recognizes the collateral source rule, see *Denco Bus Lines v. Hargis,* 204 Okla. 339, 229 P.2d 560 (1951).

5. The accident occurred in 1977 at which time the statutory minimum required uninsured motorist coverage was $5,000. (47 O.S.1971 § 7–204).

tion of the legislative purpose contained in the Uninsured Motorist Statute and are therefore void.

The decision appealed from is reversed and remanded with instruction to enter judgment for the appellant.

BARNES, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN, HARGRAVE and WILSON, JJ., concur.

OPALA, J., concurs in part, dissents in part.

IRWIN, C.J., dissents.